[Cite as *State v. Macko*, 2017-Ohio-253.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-022** |
| JOHN S. MACKO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 15 CR 000811.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, *Alana A. Rezaee,* Assistant Prosecutor, and *Patrick J.* Condon, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith,* 755 White Pond Drive, Suite 403, Akron, OH 44320 (For Defendant-Appellant).

THOMAS R. WRIGHT, .J.

{¶1} Appellant, John S. Macko, appeals his conviction, following a jury trial, of aggravated burglary and impersonating a peace officer. The principal issue is whether appellant's conviction was supported by sufficient, credible evidence. For the reasons that follow, we affirm.

{¶2} On November 6, 2015, appellant was indicted in a four-count indictment in which he was charged with aggravated burglary, a felony-one, with a repeat violent

offender ("RVO") specification (Count 1); burglary, a felony-two, with an RVO specification (Count 2); impersonating a peace officer, a felony-three (Count 3); and impersonating a peace officer, a felony-four (Count 4). Appellant pleaded not guilty.

{¶3} The trial court granted appellant's motion to bifurcate the RVO specifications in Counts 1 and 2. The case proceeded to jury trial.

{¶4} Judith Graham, a 74-year old retired chemical lab technician, testified that on September 19, 2015, at about 4:00 a.m., while she was dozing in her apartment in the Kensington Apartments in Painesville, she heard a loud banging on her door. She went to her grandson, Mr. Cannon's, room, woke him up, and said there was someone at the door. The two of them went to the kitchen door. Ms. Graham asked who was at the door, and a male's voice said, "Police, open up."

{¶5} Mr. Cannon opened the door and the fist of a white male immediately punched him in the face. Mr. Cannon's nose was bleeding and he ran out of the kitchen, while Ms. Graham was trying to push the door shut. Ms. Graham said there were two men outside her door. One was a black male, who she later identified as Lebaine Fourqurean, and the other was the white male who had punched Mr. Cannon, who Ms. Graham later identified as appellant.

{¶6} Ms. Graham said she kept yelling at the men through the door to "get out." They said, tell Mr. Cannon to come down and "give up the money." She said she kept trying to push the door shut, but Lebaine had his foot in the doorway preventing her from shutting it. Then, suddenly, the door flew open and pushed Ms. Graham into the refrigerator, bruising her back. Once inside, Lebaine told Ms. Graham, "I'm going to punch you in your f _ _ _ ing face." At that time Lebaine and appellant were standing

2

next to each other by the kitchen table. Ms. Graham said that appellant did not say anything to her; he just stood next to Lebaine and "looked intimidating and scared [her] to death."

{¶7} Ms. Graham ran out of the kitchen, grabbed her cell phone, ran into the bathroom, locked the door, and called 911. She said she was terrified because she thought the intruders would break down the bathroom door. She told the dispatcher that there had been a break-in in her apartment and that her grandson had been punched. While Ms. Graham was still on the phone, Mr. Cannon told her through the door that the men had left.

{¶8} Ms. Graham said that within minutes, Officer Houston arrived. She said she did not let him in at first because she was afraid the intruders might have come back. Ms. Graham was still on the phone with the dispatcher, who told Ms. Graham it was all right to open the door. After Ms. Graham looked out her kitchen window and saw Officer Houston in uniform standing by her door, she opened the door for him. She then told him what had happened.

{¶9} Ms. Graham testified that a short time later, another officer drove his cruiser up to her apartment and she saw a black male in his car and identified him as one of the men who broke into her apartment. Then, another officer drove up to her apartment. She saw appellant in his cruiser and identified him as the male who punched Mr. Cannon.

{¶10} Ms. Graham testified that after the incident, Mr. Cannon reminded her that the black male who broke into the apartment was Lebaine Fourqurean. She remembered him because, years ago, he used to be friends with Mr. Cannon and would

3

come to her apartment to visit him. She said that about two years ago, she told Lebaine to stop coming to the apartment because she discovered he was giving drugs to Mr. Cannon. Ms. Graham said she had never seen appellant before.

{¶11} Ms. Graham said that her grandson obtained medical treatment for his injuries. He had an injury to his nose, which resulted in swelling that lasted two weeks, and a cut near his eye.

{¶12} Ms. Graham said that after the incident, Mr. Cannon told her the intruders went through the living room and stole his pack of Newport cigarettes and cigarette lighter, which were on the coffee table in the living room.

{¶13} Officer Robert Houston of the Painesville Police Department testified that he was dispatched to respond to a "burglary in progress" at Ms. Graham's apartment. He said that, upon arrival, Ms. Graham was visibly upset. Her hands were shaking and she was having difficulty breathing. Mr. Cannon was in the apartment wiping blood from a cut next to his eye. Ms. Graham provided a description of the two intruders and their car. Ms. Graham said the black male was wearing a red shirt and the white male was wearing a white shirt.

{¶14} Officer Houston radioed the descriptions to other officers in the area who were searching for the suspects. The officer also took statements from both Ms. Graham and Mr. Cannon. Officer Houston identified photographs of Mr. Cannon in court showing he had a cut on the side of his eye and a swollen nose. The officer said that after the suspects were apprehended, they were driven to Ms. Graham's apartment and, in separate show-ups, Ms. Graham positively identified both males as being involved in the crimes.

4

**{¶15}** Painesville Police Officer Nicholas Sholtz testified that he was dispatched on a call of a home invasion to Ms. Graham's apartment and, while en route to that location, he overheard a radio report that the two suspects had fled the area. Dispatch also provided the description of the suspects and their car. Officer Sholtz checked the parking lot of a business across the street from Ms. Graham's apartment, and located the suspect vehicle backed into a parking space facing the driveway. Officer Sholtz observed movement inside the vehicle so he put his spotlight on it.

**{¶16}** Officer Sholtz said there were three males in the car. In addition to the driver, the black male in the front passenger seat and the white male in the back seat on the driver's side were wearing clothes that matched the descriptions provided by dispatch. The occupants exited the vehicle. The black male, later identified as Lebaine Fourqurean, came out of the front passenger seat. Officer Sholtz handcuffed him and placed him in the back of his cruiser. Officer Thompson placed appellant in the back of his car. The driver, Peter Peteritis, was taken into custody. Lebaine and appellant were identified by Ms. Graham.

**{¶17}** Painesville Officer Michael Decaro searched the suspect vehicle and found a partially used pack of Newport cigarettes in the center arm rest.

**{¶18}** After appellant was arrested and booked, in a recorded telephone call appellant made from jail, he admitted punching Mr. Cannon.

**{¶19}** Appellant did not present any witnesses to the events that took place inside Ms. Graham's apartment and thus her testimony regarding those events was undisputed. Instead, appellant presented the testimony of his driver, Peter Peteritis, and his alleged ex-girlfriend, Shauntae Cruz.

{¶20} Peteritis admitted he was with appellant and Lebaine when they were arrested. He said he owned the car in which the three men were found by police and he was their driver that night. He said that at 3:00 a.m., Lebaine called him and asked for a ride. Peteritis said he picked him up and then they picked up appellant. Peteritis said he drove them to a gas station and they went in to get a pack of Newport cigarettes. Peteritis said he then drove them to the Kensington apartments, but he said he did not know why Lebaine and appellant wanted to go there. He said he never heard any plans to rob that apartment. He said that Lebaine directed him to the apartment where he was to stop and that when he parked, Lebaine and appellant "casually" walked to the apartment. He said they "casually" walked in the apartment and did not push the door open. He said that when they left the apartment, they "casually" walked away from it and entered his car. He said they did not discuss what happened inside the apartment. He said he drove Lebaine and appellant to a parking lot across the street and parked there because, when they left the apartment, Lebaine suggested they stop there for a cigarette. Shortly after, they were arrested by the police. On cross-examination, Peteritis said he "did not remember" telling Officer Sickles that he never saw Lebaine and appellant enter the apartment that night.

{¶21} Shauntae Cruz testified that appellant is her ex-boyfriend. She said they were still together on the night in question and that she and appellant smoke Newports. She also said that during one of the phone calls she had with appellant while he was in jail, he admitted he struck Mr. Cannon that night.

{¶22} The jury found appellant guilty of all counts as charged in the indictment. The court found that Count 1 (aggravated burglary) and Count 2 (burglary) merged and

6

that Counts 3 and 4 (the two impersonation charges) merged. The state elected to proceed with sentencing regarding aggravated burglary, a felony-one (Count 1), and impersonating a peace officer, a felony-three (Count 3). The court set the matter for a combined hearing on appellant's RVO specification hearing and sentencing.

{¶23} Following a hearing, based on the state's evidence that appellant was previously convicted of aggravated robbery, a felony-one, and burglary, a felony-two, in one case and two counts of felonious assault, each being a felony-two, in another case, the court found appellant guilty of the specification.

{¶24} The court sentenced appellant on Count 1, aggravated burglary, a felony-one, to 11 years in prison; on Count 3, impersonating a peace officer, a felony-three, to three years; and on the RVO specification, 10 years, each term to be served consecutively to the others, for a total of 24 years in prison.

{¶25} Appellant appeals his conviction, asserting four assignments of error. For his first, he alleges:

{¶26} "Appellant's convictions for impersonating a peace officer were not supported by sufficient evidence."

{¶27} Appellant challenges the sufficiency of the evidence with respect to his "conviction" of both impersonation charges. However, while appellant was found guilty of both impersonation charges, he was only convicted of Count 3 (impersonation, a felony-three). A conviction requires both a guilty verdict and a sentence. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶12. Because the court merged Counts 3 and 4 (the two impersonation charges) and the state elected to proceed with sentencing

on Count 3, appellant was only convicted of impersonation under Count 3. Thus, appellant's sufficiency challenge is limited to Count 3.

{¶28} An appellate court reviewing the sufficiency of the evidence in a criminal matter examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring). Whether the evidence is legally sufficient to sustain a verdict is a question of law that we review de novo. *Id.* at 386.

{¶29} Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks, supra*, at 272. As circumstantial evidence and direct evidence are indistinguishable in this respect "all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Id.*

{¶30} R.C. 2921.51(E), which defines the impersonation offense of which appellant was convicted, provides: "No person shall commit a felony while impersonating a peace officer * * *." The felony involved here is aggravated burglary, as defined in R.C. 2911.11(A)(1), which provides:

> {¶31} No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another * * *."

8

**{¶32}** As pertinent, here, the word "impersonate" means "*to act the part of [or] assume the identity of * * * a member of a class of persons with purpose to make another person believe that the actor is * * * a member of that class of persons*." (Emphasis added.) R.C. 2921.51(A)(4).

**{¶33}** Further, appellant concedes the state prosecuted him under a theory of complicity. Thus, in considering the sufficiency of the evidence with respect to his conviction of Count 3, impersonating a peace officer, a felony-three, this theory must be considered. R.C. 2923.03(A), which defines "complicity," provides, in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * [a]id or abet another in committing the offense."

**{¶34}** In *State v. Stack*, 11th Dist. Lake No. 2014-L-122, 2015-Ohio-5521, this court stated:

> **{¶35}** "For purposes of R.C. 2923.03 "'aid and abet'" means 'to assist or facilitate the commission of a crime, or to promote its accomplishment.' *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001) * * *, citing Black's Law Dictionary (7 Ed.Rev. 1999) 69. This court has stated that mere presence of the accused at the scene of the crime is not enough, 'rather the state must establish that the offender "took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture."' *State v. Sims*, 11th Dist. Lake No. 2001-L-081, 2003-Ohio-324, ¶44 (citations omitted)." *State v. Lane*, 11th Dist. Lake No. 2004-L-211, 2006-Ohio-1269, ¶18. *Stack, supra*, at ¶47.

**{¶36}** Further, this court in *State v. Weimer*, 11th Dist. Lake No. 2013-L-005, 2016-Ohio-3116, recently stated:

> **{¶37}** "To support a conviction for complicity by aiding and abetting * * *, the evidence must show that the defendant supported, assisted, * * * [or] cooperated with * * * the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson*, [*supra*,] at syllabus. "*Such intent may be inferred from the circumstances surrounding the crime.*" *Id.*

9

"Criminal intent * * * can be inferred from *the presence, companionship and conduct of a criminal defendant both before and after* the offense is committed, *State v. Pruett*, 28 Ohio App.2d 29, 34 (1971) * * *, and may be proven by either direct or circumstantial evidence. *See State v. Mootispaw*, 110 Ohio App.3d 566, 570 (4th Dist.1996) * * *; *State v. Cartellone*, 3 Ohio App.3d 145, 150 (1981) * * *." *State v. Nievas*, 121 Ohio App.3d 451, 456-457 (8th Dist.1997). (Emphasis added.) *Weimer, supra*, at ¶51.

{¶38} The state presented sufficient evidence that appellant assisted Lebaine in committing aggravated burglary in that he assisted Lebaine in using force or deception to trespass in Ms. Graham's apartment with the purpose to commit therein any criminal offense and inflicted, attempted, or threatened to inflict physical harm on Ms. Graham and/or Mr. Cannon. Further, the state presented evidence that appellant assisted Lebaine in committing aggravated burglary while appellant assisted Lebaine in acting the part of or assuming the identity of a police officer with the purpose to make Ms. Graham and/or Mr. Cannon believe Lebaine was a police officer.

{¶39} Specifically, the evidence showed that appellant and Lebaine showed up at Ms. Graham's apartment at 4:00 a.m., unannounced and uninvited, after she had previously told Lebaine he was not permitted to come to her home. Lebaine and/or appellant pounded on her door and when she asked who was there, a male's voice, which she later identified as Lebaine's, said, "Police, open up." When Mr. Cannon opened the door, appellant put his fist in the doorway and punched Mr. Cannon, causing serious swelling of his nose and a cut near his eye. Mr. Cannon then ran out of the kitchen, leaving his grandmother alone. Ms. Graham struggled to close the door on Lebaine and appellant, but Lebaine prevented her from closing it by keeping his foot in the doorway. Ms. Graham kept yelling at the men to "get out." They said, tell Mr. Cannon to come down and "give up the money." Suddenly, Lebaine and appellant

10

pushed the door open with such force that Ms. Graham was pushed three feet against the refrigerator, bruising her back. While Ms. Graham said she could not be sure both men pushed the door in because they were behind the door, she said they "pushed the door open so strongly that I can't believe that one person had that kind of strength to fly that door open that hard * * * [t]o whack into the wall and send me flying." Inside the apartment, Lebaine told Ms. Graham, "I'm going to punch you in your f _ _ _ ing face" while appellant stood right next to him and, according to Ms. Graham, "looked intimidating and scared [her] to death." Ms. Graham grabbed her phone and, after locking herself in the bathroom, called the police. Soon after she made her report, she identified Lebaine and appellant as the men who entered her home and appellant as the man who punched her grandson.

{¶40} The foregoing also provided circumstantial evidence of appellant's intent to assist Lebaine in the commission of impersonation of a police officer and aggravated burglary. As to impersonation, within seconds of Lebaine announcing "Police, open up," Mr. Cannon opened the door and appellant punched him, thus enforcing Lebaine's order. As to aggravated burglary, although Ms. Graham yelled at the suspects to "get out" after appellant punched Mr. Carroll, appellant refused and entered the apartment with Lebaine. Then, while Lebaine threatened to punch Ms. Graham, appellant stood right next to him saying nothing, but acting in a way that intimidated Ms. Graham, which scared her to death, making Lebaine's threat to harm her even more terrifying.

{¶41} Construing the evidence in a light most favorable to the state, as we are required to do in considering a sufficiency challenge, we hold the jury could have found the elements of impersonating a peace officer were proven beyond a reasonable doubt.

**{¶42}** Appellant's first assignment of error is overruled.

**{¶43}** For his second assignment of error, appellant alleges:

**{¶44}** "Appellant's convictions were against the manifest weight of the evidence."

**{¶45}** A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *Thompkins, supra,* at 387. The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. *Id.* Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the trier of fact. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). The role of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins, supra,* at 390. If the evidence is susceptible to more than one interpretation, an appellate court must interpret it in a manner consistent with the verdict. *State v. Banks*, 11th Dist. Ashtabula No. 2003-A-0118, 2005-Ohio-5286, ¶33.

**{¶46}** Appellant's various manifest-weight challenges lack merit. First, the fact that Ms. Graham identified only Lebaine's voice as the voice that said, "Police, open up," is irrelevant since the state prosecuted appellant on a complicity theory. Moreover, the evidence of appellant's complicity is fully set forth in our analysis under the first assigned error.

12

{¶47} Second, the inconsistencies noted between Ms. Graham's trial testimony and her prior comments to the dispatcher and in her police statement were inconsequential and fully explained by Ms. Graham. While her police statement indicated the fist that punched Mr. Carroll was black, she said she misspoke in her statement because she was upset. She said, "I definitely saw the white hand, so I know that's a fact."

{¶48} Appellant also argues that because the door is a steel door and Mr. Cannon was near the opening, Ms. Graham could not have known there were two men trying to get in her apartment. However, to the contrary, she said she saw appellant punch Mr. Cannon and that she saw Lebaine had his foot in the doorway preventing her from closing the door. In any event, appellant never disputed at trial that he and Lebaine were the men trying to gain entry into the apartment. In fact, appellant admitted he punched Mr. Cannon while they were trying to get into the apartment.

{¶49} Further, appellant argues that while Ms. Graham testified at trial that "they" were trying to push their way in her apartment, she told the dispatcher a black male forced his way into her home and was trying to punch her grandson, suggesting there was only one suspect. However, Ms. Graham explained at trial that, while she could not be certain both men tried to push the door open because they were behind a steel door and she could not see them the whole time, she believes both men forced the door open due to the tremendous force exerted on the door to open it, resulting in her being thrown some three feet into the refrigerator.

{¶50} Third, appellant argues there was no evidence he trespassed into Ms. Graham's apartment to commit a crime (an element of aggravated burglary) because

13

there is no evidence linking the stolen cigarettes and lighter to him. However, in proving the elements of complicity to commit aggravated burglary, the state presented evidence that appellant assisted Lebaine in trespassing into Ms. Graham's home by force or deception with purpose to rob Mr. Cannon and that appellant inflicted, attempted, or threatened to inflict physical harm on Ms. Graham and/or Mr. Cannon. The state's evidence proving appellant's complicity to commit aggravated burglary is fully set forth in our analysis of appellant's first assignment of error.

{¶51} The parties presented conflicting evidence regarding whether appellant aided and abetted Lebaine in committing aggravated burglary and impersonating a peace officer. In finding appellant guilty, the jury obviously found the state's evidence to be more credible than appellant's. In doing so, we cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that appellant is entitled to a new trial.

{¶52} Appellant's second assignment of error is overruled.

{¶53} For his third assignment of error, appellant contends:

{¶54} "The trial court abused its discretion in overruling Appellant's motion to admit Judith Graham's written statement to the Painesville Police Department, the transcript of Judith Graham's testimony to the Lake County Grand Jury, and the Painesville Police Department report."

{¶55} This court has stated that "[a]n appellate court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard." *State v. Clark*, 11th Dist. Trumbull No. 2013-T-0106, 2014-Ohio-5704, ¶65. An "abuse of discretion" is a term of art, connoting judgment exercised by a court, which does not

14

comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30. Further, Evid.R. 103(A) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"

{¶56} Evid.R. 613 provides, in pertinent part:

{¶57} (B) * * * Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

{¶58} (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

{¶59} (2) The subject matter of the statement is one of the following:

{¶60} (a) A fact that is of consequence to the determination of the action other than the credibility of a witness[.]

{¶61} The Twelfth District, in addressing the requirements for admissibility of extrinsic evidence of a prior inconsistent statement by a witness, stated:

{¶62} [U]nder Evid.R. 613(B), a party may introduce extrinsic evidence of a prior inconsistent statement to impeach the witness's credibility. In order to introduce the prior inconsistent statement into evidence, proper foundation must be laid. *State v. Lewis*, 12th Dist. [Fayette] No. CA2010-08-017, 2011-Ohio-415, ¶30, citing *State v. Mack*, 73 Ohio St.3d 502, 514-515 (1995). *A proper foundation is laid where the witness denies making the prior statement. State v. Hartman*, 12th Dist. [Clermont] No. CA98-06-040, 1999 Ohio App. LEXIS 1476, *16 (April 5, 1999), citing *State v. Colvin*, 12th Dist. [Butler] No. CA94-04-092, 1995 Ohio App. LEXIS 903, *11 (March 13, 1995). However, *if a witness admits to making the prior inconsistent statement then extrinsic evidence is not admissible. Id.*; *State v. Kulasa*, 10th Dist.[Franklin No.] 11AP-826, 2012-Ohio-6021, ¶12. (Emphasis added.) *State v. Mathes*, 12th Dist. Clermont No. CA2012-03-028, 2013-Ohio-1732, ¶10.

15

{¶63} Extrinsic evidence of Ms. Graham's alleged prior inconsistent statements was not admissible because she admitted making the prior statements at issue.

{¶64} In any event, during cross-examination, defense counsel questioned Ms. Graham at length about each of the alleged inconsistencies in her prior statements and testimony. In her police statement, as noted above, she said that after the black male said it was the police, "[t]hen he punched my grandson in the face." Of course, at trial, Ms. Graham testified that appellant, the white male, punched her grandson. Ms. Graham acknowledged this inconsistency at trial and explained that she does not know why she said that other than she was so upset at the time because she knows she saw a white hand come in and punch her grandson.

{¶65} Appellant also questioned Ms. Graham about an alleged inconsistency in her grand jury testimony. She admitted she testified before the grand jury that "they" said, "Police, open up" and "they" opened the door, rather than just Lebaine. However, Ms. Graham explained at trial that she used the word "they" at the grand jury because she knew there were two suspects at the door and she was not sure if they both said "Police" and tried to push the door in. At trial, she said that because she was not sure of appellant's involvement in those activities, she could only say for sure that Lebaine said and did these things. Thus, there was no inconsistency on this point, and, to the extent there was, Ms. Graham explained it.

{¶66} Appellant also argues the trial court erred in denying his motion to admit Officer Houston's police report in evidence. However, appellant does not refer to any inconsistency between Ms. Graham's trial testimony and the police report in his argument so there is nothing for us to consider. In any event, when Officer Houston

16

was asked whether, according to the police report, Ms. Graham said that one man or more than one said, "Police, open up," the officer said the report was unclear on that point. Thus, there was no inconsistency between the report and Ms. Graham's testimony.

{¶67} Appellant argues that because Ms. Graham did not remember making some comments in her police statement and grand jury testimony, the court should have admitted her statement and the transcript of the grand jury proceeding in evidence. However, while Ms. Graham made some gratuitous comments during her cross-examination about not remembering making some alleged inconsistent comments in her statement and grand jury testimony, a review of her trial testimony shows she remembered the alleged inconsistencies cited by appellant and explained them

{¶68} In any event, even if the court abused its discretion in not admitting the documents, any error would have been harmless because Ms. Graham was cross-examined about the differences between her trial testimony on the one hand and her prior statements and testimony on the other and thus *the jury was fully aware of these differences.*

{¶69} We therefore hold the trial court did not abuse its discretion in not admitting the foregoing documents in evidence.

{¶70} Appellant's third assignment of error is overruled.

{¶71} For appellant's fourth and final assignment of error, he contends:

{¶72} "Appellant's sentence was not supported by the record."

{¶73} Appellant raises various challenges to his sentence. The Supreme Court of Ohio recently clarified the standard of review of felony sentences in *State v. Marcum*,

17

146 Ohio St.3d 516, 2016-Ohio-1002, in which the Court held: "Applying the plain language of R.C. 2953.08(G)(2), we hold that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶1.

{¶74} Appellant argues the trial court erred in finding under R.C. 2929.12(E)(5) that he displayed "no genuine remorse" because, he argues, he has apologized to the victims.

{¶75} The Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, held that R.C. 2929.11 and R.C. 2929.12 do not require judicial fact-finding. Rather, in sentencing a defendant for a felony, a court is merely required to consider the purposes and principles of sentencing in R.C. 2929.11 and the statutory * * * factors in R.C. 2929.12. *Foster, supra*, at ¶42. Thus, the trial court was not required to make findings regarding whether appellant exhibited genuine remorse, the court was only required to consider this factor. Since the record reflects that the court considered this factor, the argument lacks merit.

{¶76} In any event, this court has held that "'a reviewing court must defer to the trial court as to whether a defendant's remarks are indicative of genuine remorse because it is in the best position to make that determination.'" *State v. Schmiege*, 11th Dist. Lake No. 2015-L-020, 2015-Ohio-4029, ¶14, quoting *State v. Dudley*, 11th Dist. Lake No. 2009-L-019, 2009-Ohio-5064, ¶22.

{¶77} Moreover, appellant concedes that at sentencing he made statements to the sentencing judge that contradicted his expression of remorse. While appellant

18

admitted at sentencing that he punched Mr. Cannon, he told the judge that he was innocent. When the judge said he had to take that into consideration with respect to whether appellant showed genuine remorse, appellant said he could not have remorse for something he did not do. When the judge said the evidence showed that appellant punched his way into the house, appellant called the judge a "[l]ying piece of shit" and told the judge, "You're a piece of shit, Lucci." Such hostile, disrespectful, and completely unprovoked comments militate strongly against any genuine remorse.

{¶78} Next, appellant argues that, while the court's sentence of ten years in prison on the RVO specification was authorized by R.C. 2929.14(B)(2)(b), the court should have imposed a lesser sentence because the convictions that were the subject of the specification were committed when he was 17 years old and, further, appellant had planned to seek mental health treatment had he been acquitted in the present case.

{¶79} However, in considering the factors in R.C. 2929.11 and R.C. 2929.12 that made appellant's offenses more serious, the court noted that the victim was an elderly woman; that both victims suffered serious psychological harm; and that Mr. Cannon suffered serious physical harm. The court noted that appellant has a lengthy history of crimes and juvenile delinquency adjudications. The court noted that at ten years old, appellant stabbed his mother in the face when she tried to stop appellant from assaulting his sister. The court noted that in 1999, appellant was convicted in the Lake County Court of Common Pleas of aggravated robbery, a felony-one, with a firearm specification, and burglary, a felony-two, with a firearm specification. In an unrelated case in that court, he was also convicted of two counts of felonious assault, each being a felony-two. These two cases were consolidated and appellant's aggregate sentence

was nine years in prison. Appellant was released in January 2008, and placed on five years' post-release control.

**{¶80}** In January 2009, appellant was convicted of resisting arrest in the Painesville Municipal Court and placed on probation. In May 2009, he was convicted of having weapons under disability, a felony-three, with a firearm specification in the trial court. The latter conviction resulted in a violation of appellant's post-release control. Appellant was sentenced to serve the remaining one year on his 1999 aggravated robbery conviction and five years on the weapons charge, the terms to be served consecutively, for a total of six years.

**{¶81}** In 2012, while appellant was in prison, he was convicted of assault on a corrections officer, a felony-five, in the Trumbull County Court of Common Pleas and sentenced to one year in prison

**{¶82}** Appellant was released from prison in May 2015, and, just four months later, while he was on post-release control, he committed the instant offenses, thus violating post-release control.

**{¶83}** The trial court noted that appellant has failed to rehabilitate after his prior convictions and delinquency adjudications and he has failed to respond to probation and parole. He refuses to acknowledge his drug and alcohol problems or to accept treatment for either. The court noted appellant's psychological diagnosis is anti-social personality disorder, which, the court noted, means he will continue to be dangerous, violent, and aggressive to others. The court noted that appellant has had 17 infractions while in prison and that he poses the greatest likelihood of recidivism. Thus, the court's sentence of ten years on the RVO specification was supported by the record.

20

**{¶84}** Appellant also argues the trial court's ten-year sentence on the RVO specification was not supported by clear and convincing evidence and thus should be vacated. However, appellant's argument is unpersuasive. The Eighth District in *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, stated:

> **{¶85}** It is * * * important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly, and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review. *Venes, supra*, at ¶21.

**{¶86}** Next, appellant argues the court erred in sentencing him to consecutive sentences. He does not dispute that the court made the necessary findings for such sentences in R.C. 2929.14(C). In fact, the trial court made the necessary findings on the record and in the court's judgment on sentence. Rather, appellant argues that because he did not threaten the victims or cause any harm to the victims other than punching Mr. Cannon, the court should not have imposed consecutive sentences. However, appellant confuses the court's responsibility to consider the seriousness factors in R.C. 2929.12 with its duty to make the findings necessary for consecutive sentences. Since the court made the latter findings, appellant's consecutive sentences were not contrary to law.

**{¶87}** We therefore hold that appellant's sentence was not clearly and convincingly contrary to law.

**{¶88}** Appellant's fourth assignment of error is overruled.

{¶89} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.