[Cite as *State v. Square*, 2018-Ohio-4574.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-145** |
| DAMIAN J. SQUARE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 001217.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert, Assistant Prosecutor,* Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith,* Brian A. Smith Law Firm, LLC, 755 White Pond Drive, Suite 403, Akron, OH 44320 (For Defendant-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Damian Square, appeals from the judgment entered by the Lake County Court of Common Pleas, after trial by jury, convicting him of gross sexual imposition, a felony of the third degree, and illegal use of a minor in nudity-oriented material or performance, a felony of the second degree. We affirm.

{¶2} This prosecution emanated from allegations of sexual abuse made by a minor, S.S., against appellant. Prior to the allegations, appellant resided with then

eight-year-old S.S., her brother, then 12-year-old J.D.M.S., and her mother, Amber Jenkins, in an apartment located in Fairport Harbor, Ohio. Appellant moved in with Ms. Jenkins and her children after a breakup with the children's father, Justin Spiesman. Ms. Jenkins testified she knew appellant for approximately three years prior to the accusations and had commenced dating about a month after they met.

{¶3} Appellant and the children seemed to bond. Appellant played catch and video games with J.D.M.S. and took the children off-roading on at least one occasion. He purchased Christmas gifts for them and, in the summer, along with Ms. Jenkins, took the children kayaking on various occasions.

{¶4} Ms. Jenkins was required to attend three A.A. meetings per week and, because S.S. and J.D.M.S. did not always get along, appellant would watch the children while she was out. During these times, J.D.M.S. would typically remain in his room playing video games, while appellant would watch movies with S.S. in his and Ms. Jenkins' bedroom.

{¶5} Over time, S.S. began to spend more time with appellant and Ms. Jenkins noticed a change in S.S.' relationship with appellant. She became uncomfortable seeing the way in which appellant and S.S. would "cuddle" together. Meanwhile, appellant's and Ms. Jenkins' relationship was deteriorating. They began arguing more frequently and, on December 29, 2015, the couple had an explosive argument after which appellant threw his phone into the wall and stormed out of the apartment. Later on, as Ms. Jenkins was putting S.S. to bed, the girl shared "a secret" with her. S.S. disclosed appellant had been sexually abusing her. Ms. Jenkins immediately became emotional and frantic.

2

{¶6} Ms. Jenkins contacted the children's aunt, Jessica Smith, and asked her to come over. Ms. Smith subsequently contacted the children's father, Mr. Spiesman, who also came to the apartment. Ms. Smith ultimately took the children to her home and Mr. Spiesman stayed at the apartment talking with Ms. Jenkins. They eventually made contact with appellant and advised him they were aware of the sexual abuse. Appellant denied the allegations.

{¶7} The following morning, Mr. Spiesman discussed the allegations with S.S. to make sure she was not fabricating them. He emphasized the abuse claims are very serious and would affect appellant for the rest of his life. Later that day, Ms. Jenkins took her daughter to the Fairport Harbor Police Department. A Fairport Harbor police officer accompanied Ms. Jenkins to her apartment and appellant's laptop computer was found under the couple's bed. The laptop was examined by, Jamie Walsh, a digital forensic examiner at the Lake County Crime Laboratory. Mr. Walsh isolated 20 images on appellant's laptop, which were later identified by Ms. Jenkins as photographs of S.S. in partial states of nudity, including photos which focused upon the child's private parts. The metadata from the images provided the dates that the photographs were taken by an LG smartphone; Ms. Jenkins, as well as J.D.M.S., stated appellant had an LG smartphone. Mr. Walsh noted that the images could have been transferred from the LG smartphone to the computer by simply plugging the phone into the computer.

{¶8} The metadata on the images also revealed the photographs were taken on March 25, 2015, between 6:06 a.m. and 6:10 a.m. and on April 1, 2015 at 2:41 a.m. and 2:42 a.m. and between 5:41 and 5:44 a.m. Given his job, appellant regularly awoke before Ms. Jenkins, J.D.M.S., and S.S. And, according to S.S., on one occasion, she

3

could not recall the date, she awoke in appellant's bed and discovered him photographing her private area. She claimed she was "weirded out" by the episode, but appellant allegedly assured her he would delete the picture(s).

{¶9} S.S. also recalled, on an unnamed date, she needed to use the restroom, but appellant was in the shower. She knocked and appellant gave her permission to enter. While S.S. was on the toilet, appellant pulled back the shower curtain and exposed himself to the child. The child left the bathroom embarrassed. Later that evening, when Ms. Jenkins was at an A.A. meeting, S.S. claimed that appellant invited her into his bedroom to watch a movie. Again, appellant exposed himself to the child. He then demonstrated how S.S. could make a circle with her hand and move it up and down on his penis. According to S.S., this activity occurred on multiple occasions. And the sexual activity expanded later to fellatio, cunnilingus, and appellant touching the child's vaginal area. She testified appellant used saliva on his fingers before touching her. While describing these episodes, S.S. identified what she designated a "fatty deposit" of skin the appeared at the base of appellant's penis. She asserted she had observed the skin many times during the course of the abuse; she denied seeing the skin when appellant exposed himself in the shower and also denied that her mother had ever disclosed this feature of appellant's anatomy. Investigators later confirmed appellant had the feature described by S.S.

{¶10} Appellant denied all allegations made by S.S. He maintained they had a fine, albeit sometimes troubled relationship; appellant specifically acknowledged they had certain conflicts over S.S.' refusal to do homework, chores, or clean up after herself. S.S. also stated she was angry with appellant because, during fits of anger, he

4

threw his cell phone and allegedly kicked the walls of the apartment. Moreover, S.S. stated she was afraid of appellant because he had struck Ms. Jenkins when they were on vacation. According to appellant, these conditions, combined with evidence that S.S. could have been exposed to pornography and other sexual matters from other sources, provided an alternative explanation to S.S.' allegations.

{¶11} As a result of S.S.' claims, appellant was indicted on four counts of rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(B); four counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4); one count of illegal use of a minor in nudity-oriented material, a felony of the second degree, in violation of R.C. 2907.323(A)(1); and one count of possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A), with a forfeiture specification.

{¶12} Prior to trial, the state moved to amend the indictment and dismiss three of the four counts of rape, and three of the four counts of gross sexual imposition, along with the sole count of possession of criminal tools; and to change the date on the remaining counts of rape and gross sexual imposition to encompass the time period from November 1, 2014 to December 29, 2015. The motion was granted.

{¶13} The matter proceeded to trial by jury after which appellant was acquitted on the sole count of rape and convicted on the remaining counts of gross sexual imposition and illegal use of a minor in nudity-oriented material. Following a sentencing hearing, appellant was sentenced to a total of 60 months in prison on the gross sexual imposition charge and eight years in prison on the charge of illegal use of a minor in nudity-oriented material. The court ordered the sentences be served consecutively, for an aggregate term of 13 years imprisonment.

{¶14} Appellant now appeals and assigns three errors. His first assignment of error provides:

{¶15} "The trial court's decision to allow testimony from Justin Spiesman that, inter alia, 'she [S.S.] told me everything she told was the truth,' and that this statement was made after Spiesman testified that he told her that 'this wasn't something to be joking about' and that if she wasn't telling the truth, it 'could ruin this man's life * * * and it would stick with him' was an abuse of discretion."

{¶16} Under this assignment of error, appellant asserts his right to due process was violated when Mr. Spiesman testified to S.S.' prior consistent statement in violation of Evid.R. 801(D)(1)(b). Appellant contends there was no prior challenge to S.S.' credibility at the time when Mr. Spiesman testified and, as a result, the statement was inadmissible hearsay. In response, the state does not attempt to defend the admissibility of Mr. Spiesman's testimony by recourse to Evid.R. 801(D)(1)(b); indeed, the state concedes the statement was improper. Nevertheless, the state emphasizes defense counsel did not specifically object to the statement and, because it was an isolated incident of improper hearsay, the admission of the testimony does not rise to the level of plain error.

{¶17} At trial, Mr. Spiesman, S.S.' father, testified regarding the contact he had with S.S. on the morning after she disclosed the abuse to her mother. The following exchange between the prosecutor and Mr. Spiesman is germane to the instant issue:

{¶18} Q. All right. And at some point in time you left [Ms. Jenkins' residence]; where did you go?

{¶19} A. Back to my house.

6

{¶20} Q. All right. Now when you went back to your house with your sister did you have any contract with your daughter?

{¶21} A. I made sure they were sleeping and all right and covered up or whatnot and then I went back, they were sleeping by that time.

{¶22} Q. And by they you mean [S.S.] and [J.D.M.S]?

{¶23} A. Yes.

{¶24} Q. And the following morning did you have any contact with your daughter [S.S.]?

{¶25} A. Yes.

{¶26} Q. All right. And do you remember where that contact took place?

{¶27} A. First it was at my sister's main house and then we went back into where I was staying and talked a bit.

{¶28} Q. All right. And what was the reason you had a talk with her?

{¶29} A. To get to the bottom of what happened.

{¶30} Q. All right. And we can't talk about what [S.S.] said but what did you tell her at that time?

{¶31} A. I told her that, you know, if that this was a story or anything that she - -

{¶32} [DEFENSE COUNSEL:] Objection.

{¶33} THE COURT: Overruled. You can continue.

{¶34} A. That she needed to, if this, that this wasn't if it was something that turned out didn't happen or didn't happen the way she said that she could ruin this man's life for the rest, his reputation and it would stick with him and *she told me everything she told was the truth.*

{¶35} Q. Well, what was your tone when you talked to her about this?

{¶36} A. It was a serious, I wanted her to know that I was serious, this isn't just something you just say about anybody.

{¶37} Q. And was she listening to you?

**{¶38}** A. Yes. (Emphasis added).

**{¶39}** Appellant's argument focuses upon Mr. Spiesman's answer which included the hearsay statement of S.S. Defense counsel objected prematurely, anticipating the possibility of hearsay. He did not, however, object after Mr. Spiesman's hearsay testimony. The failure to object to the introduction of hearsay evidence waives all claims save plain error. *See e.g. State v. Santiago*, 10th Dist. Franklin No. 02AP-1094, 2003-Ohio-2877, ¶11. Pursuant to Crim.R. 52(B), a plain error is a defect affecting substantial rights that may be noticed even if the trial court did not pass upon the issue. *See e.g. State v. Long*, 53 Ohio St.2d 91, 94 (1978). Plain error may be invoked only in exceptional circumstances to avoid a miscarriage of justice. *Id.* at 95*.* The rule is that an error to which no objection has been interposed will not be recognized "unless, but for the error, the outcome of the trial clearly would have been otherwise." *Id.* at 97. In order for Crim.R. 52(B) to apply, a reviewing court must find that (1) there was an error, i.e., a deviation from a legal rule; (2) that the error was plain, i.e., that there was an obvious defect in the trial proceedings; and (3) that the error affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

**{¶40}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). As noted above, the state concedes Mr. Speisman's testimony was hearsay. Hence, we need not address appellant's preemptive claim that Evid.R. 801(D)(1)(b), governing prior consistent statements, is an inapplicable exception to the general rule against hearsay. "[I]n general, 'the improper admission of a single

8

hearsay statement may be considered "harmless" error.'" *State v. Deaton*, 2d Dist. Montgomery No. 27181, 2017-Ohio-7094, ¶10, quoting *State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio 118, ¶78 (11th Dist.). In *Butcher*, this court further observed that the foregoing is "especially true when the victim directly testifies to the alleged events." *Id.*

{¶41} We first point out appellant contends Mr. Spiesman's hearsay testimony was an attempt to bolster S.S.' allegations and testimony. The record does not support this claim. The prosecutor specifically cautioned, if not forbade, Mr. Spiesman from relating the information S.S. shared with him when he approached her about the allegations. The prosecutor advised Mr. Spiesman to testify only to what he told S.S. Accordingly, although the testimony is inadmissible hearsay, it must be framed as "unsolicited" or, perhaps "unexpected" hearsay. Thus, we do not agree that the prosecutor had the specific intent to bolster S.S.' credibility when the hearsay statement was uttered.

{¶42} We recognize S.S.' credibility was an issue, both directly and indirectly. On cross-examination of S.S., defense counsel highlighted that, prior to making the accusations, she was "kind of mad" at appellant for his actions when he lost his temper, e.g., throwing a phone at the wall, kicking the wall, and her concern that he might hit her, even though he had never done so, because he struck Ms. Jenkins on vacation. These points underscored that S.S. could have had a vengeful motive for making the allegations. Moreover, Ms. Jenkins noted that S.S. had a history of not being truthful. In particular, she asserted S.S. would say she finished her homework or cleaned her room when, in fact, she had not.

9

**{¶43}** That said, S.S. testified at trial and detailed the various incidences of sexual abuse upon which the charges were premised, including inappropriate touching, fellatio, and cunnilingus. She also provided specific details of the abuse, the manner in which the abuse occurred, and unusual features of appellant's private area, e.g., the growth on his genitals and the manner in which he groomed himself, which were independently confirmed by other evidence. The jury heard the foregoing, acquitted appellant of rape, but found him guilty of the two remaining charges. Viewing the evidence in its totality, we fail to discern how the admission of isolated Mr. Spiesman's hearsay statement affected appellant's substantial rights. We therefore conclude admitting the same was not plain error.

**{¶44}** Appellant's first assignment of error is without merit.

**{¶45}** Appellant's second assignment of error provides:

**{¶46}** "Appellant's convictions were against the manifest weight of the evidence."

**{¶47}** A court considering a challenge to the manifest weight of the evidence reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed for a new trial. *State v. Swiggett*, 11th Dist. Trumbull No. 2017-T-0003, 2017-Ohio-8203, ¶10, citing *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

**{¶48}** First, appellant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides:

**{¶49}** (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the

10

offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

**{¶50}** * * *

**{¶51}** (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶52}** "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶53}** It is undisputed S.S. was under the age of 13 years old during the relevant time period. And evidence was offered, through S.S.' direct testimony, that appellant touched her genitals and/or pubic region on multiple occasions. And, during these occasions, she testified appellant made moaning noises and/or was physically and visibly sexually aroused. Appellant maintains, however, S.S.' allegations and testimony were not necessarily credible. He underscores there was no physical evidence that he sexually abused S.S. In his view, the lack of physical evidence fundamentally undermines S.S.' allegations.

**{¶54}** Appellant further contends there were alternative explanations regarding why S.S. had the sexual knowledge and lexicon to provide such detail to her allegations. Appellant testified that Ms. Jenkins used saliva to lubricate either herself or him during sexual activity and that S.S. was nearby when this occurred. Moreover, appellant claims Ms. Jenkins would play a video game, Grand Theft Auto, which contained sexual material such as sexual encounters with prostitutes. And, Ms.

11

Jenkins' brother would speak to him and Ms. Jenkins about his sex life within S.S.' earshot.

{¶55} Appellant additionally argues S.S.' allegations lacked credibility due to her purportedly troubled relationship with him and her fear of him. These points, in his view, permit the reasonable inference that S.S. had a vendetta against him and had reason to fabricate the allegations.

{¶56} While appellant's points may militate, to some extent, in his favor, they do not negate the force of S.S.' testimony, as well as the evidence that pornographic pictures of a child identified as S.S. were discovered in his personal computer. This latter point provides a foundation of the charge of use of a minor nudity-oriented material; nevertheless, it is also circumstantially probative of the sexually inappropriate and abusive relationship at the heart of the gross-sexual-imposition charge.

{¶57} Furthermore, the lack of any physical evidence of sexual abuse does not negate or weigh heavily against the verdict. Julie Loyke, a certified pediatric nurse practitioner employed at Rainbow Babies and Children's Hospital in the Care Clinic, testified that examinations outside of 96 hours after a sexual assault generally reveal no indication of injury. S.S.' examination occurred some six weeks after she disclosed the abuse. And, regardless, appellant was convicted of gross sexual imposition, which requires "sexual contact," i.e., any "touching of an erogenous zone." Such contact would not generally reveal the trauma associated with a sexual assault.

{¶58} Moreover, in addition to meeting the fundamental elements of gross sexual imposition, S.S. testified appellant had subjected her to fellatio and cunnilingus. Although he was acquitted of rape, S.S. testified to the circumstances of these

12

allegations, which provided greater detail of S.S.' knowledge of appellant's anatomy and a first-hand account of how appellant commenced the abuse. Such details add to the credibility of her claim that appellant engaged in sexual contact with her. For instance, S.S. asserted appellant exposed himself to her while in the shower and assured her there was nothing wrong with doing so. S.S. also testified that, later that evening, while watching a movie, appellant exposed himself to her, then "made a circle with his hand and he was going up and down." It was during this initial episode that, according to S.S., appellant advised her to touch his privates and mimic his movements.

**{¶59}** S.S. additionally testified that, in the course of the abuse, appellant would groom his genitals in different ways; a fact corroborated by Ms. Jenkins. And the state established, through police testimony, that appellant had a skin growth on the side of his penis. S.S. identified the growth and testified she had touched it on various occasions during the course of the abuse. She also testified she had this knowledge first hand and had not been informed by another source of its existence.

**{¶60}** The jury heard appellant's alternative explanations for S.S.' allegations and, in weighing them against S.S.' detailed testimony, found the child more credible. We cannot say the jury lost its way in drawing its conclusion.

**{¶61}** Next, appellant was convicted of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1). That subsection provides, in relevant part:

**{¶62}** (A) No person shall do any of the following:

13

**{¶63}** (1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:

**{¶64}** (a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance;

**{¶65}** (b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

**{¶66}** We first point out that subsections (a) and (b) do not apply to this case and thus the facts of this case do not fit within the statutory exception. With that in mind, appellant argues that his conviction is against the manifest weight of the evidence because state's digital forensic expert, Jamie Walsh, could not identify the victim nor could he identify whose fingers were shown in some of the photos. Notwithstanding the foregoing, S.S. testified that, on one occasion, she was awakened and observed appellant taking photographs of, inter alia, her private area. Further, Ms. Jenkins identified the individual in the photos discovered in appellant's computer as S.S. And, after the images were removed from appellant's laptop, Mr. Walsh testified the metadata from the images indicated they were taken by a LG smartphone, the brand of phone appellant owned at the relevant time period. The state set forth sufficient, credible evidence that appellant, who was not S.S.' parent or guardian, photographed the child and transferred the same to his computer in a state of nudity, i.e., depictions of

14

the child engaged in lewd exhibitions as well as depictions of the child that graphically focused on the child's genitals. *See State v. Young*, 37 Ohio St.3d 249 (1988), paragraph one of the syllabus. (Construing and limiting what constitutes "nudity" under R.C. 2907.323 to avoid unconstitutionally overbroad application.) *Accord State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3968, ¶16. We therefore hold each element of illegal use of a minor in nudity-oriented material was proven beyond a reasonable doubt.

{¶67} Appellant's second assignment of error lacks merit.

{¶68} Appellant's third assignment of error provides:

{¶69} "Appellant's sentence was not supported by the record."

{¶70} Under his final assignment of error, appellant claims the trial court erred when it sentenced him to 13-years imprisonment. He maintains the record does not clearly and convincingly support the sentence.

{¶71} We generally review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2), which states:

{¶72} The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶73} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶74} (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or

15

(C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶75}** (b) That the sentence is otherwise contrary to law.

**{¶76}** Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds that the record does not support the sentence. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶18, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶23.

**{¶77}** The Ohio Supreme Court has held, R.C. 2929.11 and R.C. 2929.12 do not require judicial fact-finding. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶42; *State v. Macko*, 11th Dist. Lake No. 2016-L-022, 2017-Ohio-253, ¶75. "Rather, in sentencing a defendant for a felony, a court is merely required to consider the purposes and principles of sentencing in R.C. 2929.11 and the statutory * * * factors in R.C. 2929.12." *Macko*, *supra*, citing *Foster, supra.*

**{¶78}** Further, the Ohio Revised Code provides, in relevant part, as follows regarding consecutive felony sentences:

**{¶79}** If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶80}** (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

16

**{¶81}** (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶82}** (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

**{¶83}** Appellant maintains that because he had no criminal history, beyond traffic violations and had no drug or alcohol issues, the trial court's sentence was not supported by clear and convincing evidence. We do not agree.

**{¶84}** At the sentencing hearing, the trial court made the following statements and findings on record:

**{¶85}** I've considered the statutes relating to the overriding principles and purposes of felony sentence in 2929.11. Also considered the seriousness and recidivism factors in 2929.12(B) through (E) and under factors that make this more serious under (B) the injury was exacerbated by the age of the victim who was 8. Also the victim suffered serious physical and psychological harm. In addition, the defendant held a position of trust as it relates to [S.S.], he was living there and was what I would refer to as a father figure and by virtue of that he was able to take advantage of that and committed the offenses that he was convicted of and that relationship facilitated these offenses.

**{¶86}** Under less serious I don't find any applicable.

**{¶87}** Under factors that indicate recidivism is more likely I don't have the slightest idea whether there is any remorse so I certainly cannot find there is any genuine remorse.

**{¶88}** Under less likely there is no juvenile record or convictions and an indication he's led a law-abiding life.

**{¶89}** There is without doubt physical harm to [S.S]. This is a sex offense. Now I know in the presentence report Mr. Square says he did not commit the crime that he was convicted of, the jury determined otherwise as to Counts 2 and 3 and I sat here, I

17

listened to all the evidence and this and this was all revealed on December 30th of '15. And my recollection is Mr. Square left with the clothes on his back and virtually nothing more and was gone until his arrest on January 2, 2017.

{¶90} The photographs were found on his computer and the way the facts laid out in this case I don't know any other remotely plausible explanation other than he took those pictures and transmitted those to his computer. So there is no question in my mind that you committed the offenses that you were convicted of. And the victim was an 8 year old girl.

{¶91} So with regard to Count 2, gross sexual imposition, a felony of the third degree, I'm going to sentence you to 60 months in Lorain Correctional. With regard to Count 3, the dissemination charge, I'm going to sentence you to 8 years in Lorain Correctional.

{¶92} You get credit for 270 days that you already served.

{¶93} And the sentences in Counts 2 and 3 shall run consecutive to one another for a total of 13 years. And I find that consecutive sentences are necessary to protect the public from future crime and to punish the defendant and that that sentence is not disproportionate to the seriousness of the defendant's conduct and the danger that he poses to the public.

{¶94} I also find that these two offenses were committed as part of a course of criminal conduct and that the harm was so great and unusual that no single term for any of those offenses adequately reflects the seriousness of your conduct."

{¶95} The court thoroughly considered the statutory factors as they related to the circumstances of this case. The court did not overlook appellant's lack of a prior record; it simply did not find his previous "law-abiding" life was sufficient to overcome its statutory findings. Indeed, it is unclear how appellant's lack of a criminal history is directly relevant to the trial court's consecutive-sentence findings. We find no error in the trial court's sentence.

{¶96} Appellant's final assignment of error is without merit.

18

{¶97} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

DIANE V. GRENDELL, J.,

concur.