[Cite as *State v. Hess*, 2019-Ohio-4223.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0106** |
| ARCHIE R. HESS, III, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2017 CR 00532.

Judgment: Affirmed.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*James W. Armstrong*, Leipply & Armstrong, 2101 Front Street, Riverfront Centre, Suite 101, Cuyahoga Falls, OH 44221 (For Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1} Appellant, Archie R. Hess III ("Mr. Hess"), appeals the Portage County Court of Common Pleas' judgments denying his motion to withdraw his guilty plea and sentencing him to community control sanctions that included 180 days in jail, with credit for five days served, and required him to register as a Tier I sex offender, following his guilty plea to two counts of gross sexual imposition of a minor, fourth degree felonies, in violation of R.C. 2907.05(A)(4).

**{¶2}** Mr. Hess raises three errors on appeal: (1) the trial court erred in sentencing him to consecutive sentences; (2) the trial court abused its discretion in denying his motion to withdraw his guilty plea; and (3) his counsel was ineffective for allowing him to plead guilty despite his protestations of innocence.

**{¶3}** We find these contentions to be without merit. Firstly, the trial court sentenced Mr. Hess to a term of community control; thus, no consecutive sentences were ever imposed. Secondly, Mr. Hess failed to demonstrate the trial court abused its discretion in denying his motion to withdraw his guilty plea. The record reveals Mr. Hess knowingly, voluntarily, and intelligently pleaded guilty, and he failed to introduce a reasonable or legitimate basis to the contrary at a full and impartial hearing during which the court gave his arguments fair consideration. For similar reasons, Mr. Hess' last argument also fails because he failed to introduce any evidence that his counsel's assistance was ineffective and that his plea was involuntary or unknowingly made. Thus, we affirm the judgment of the Portage County Court of Common Pleas.

### Substantive and Procedural History

**{¶4}** In April of 2017, Mr. Hess was secretly indicted by the Portage County Grand Jury on six counts: two counts of unlawful sexual conduct with a minor, third degree felonies, in violation of R.C. 2907.04(A)&(B)(3); two counts of sexual battery, third degree felonies, in violation of R.C. 2907.03(A)(5)&(B); extortion, a third degree felony, in violation of R.C. 2905.11(A)(5)&(B); and, lastly, intimidation of a victim or witness in a criminal case, a first degree misdemeanor, in violation of R.C. 2921.04(A)&(D).

**{¶5}** Mr. Hess' appointed counsel filed a notice of alibi, claiming that Mr. Hess' schedule as a college student at Kent State University, where he also tutored, as well as

2

his job at a daycare, effectively proved he could not have committed the alleged sexual crimes on the minor victim. Both the state and appointed counsel filed numerous motions for continuances sparked by material produced in discovery, including Snapchat messages (a cellphone picture/messaging application) between Mr. Hess and the victim, and subsequently, the authentication of those messages. Additional time was also requested for a stipulated polygraph.

{¶6} On the day of trial, the court granted Mr. Hess' oral motion to withdraw his waiver of a jury. In anticipation of his motion, forty jurors were waiting to be called in for voir dire. The court then reviewed with Mr. Hess the state's plea offer in which he would plead guilty to two counts of gross sexual imposition, a fourth degree felony, and register as a Tier I sex offender. Mr. Hess informed the court that he rejected the offer due to the residency requirements of sex offender registration. The court then addressed defense counsel's motions in limine and the state's possibly prejudicial character evidence.

{¶7} The court held a brief recess at which time Mr. Hess and the state entered into a plea deal. Mr. Hess agreed he would plead guilty to two counts of gross sexual imposition, fourth degree felonies, and be classified a Tier I sex offender at the time of sentencing. In turn, the state would move to dismiss the balance of the indictment. Mr. Hess, with the consultation and advice of counsel, signed the written plea agreement.

{¶8} Prior to accepting Mr. Hess' written plea, the court informed Mr. Hess of the maximum sentence he would be facing and notified him of post-release control and the ramifications of violating community control if it should be imposed. The court then engaged Mr. Hess in the Crim.R. 11(C) colloquy to ensure he was knowingly, voluntarily, and intelligently pleading guilty to the charges resulting from the plea negotiations and

3

accepting them as his own. After Mr. Hess waived each of his rights and assured the court he had no questions as to his constitutional rights, the court accepted Mr. Hess' written plea of guilty, found him guilty as to the amended counts two and three of the indictment, and entered a nolle prosequi as to the remaining counts. The court then ordered a presentence investigation.

{¶9} Several weeks later, Mr. Hess filed a pro se motion to vacate his guilty plea and requested new counsel. Mr. Hess claimed his counsel was ineffective due to a breakdown in communication and that his counsel pressured and forced him to enter a plea of guilty.

{¶10} The court held a hearing on Mr. Hess' motion on November 21, 2018. Mr. Hess, who was appointed new counsel, testified. Mr. Hess told the court, "I didn't want the plea. I told my lawyer several times that day and in the months following – the month prior that I did not want the plea." Mr. Hess wanted to "go to court" and prove that he was innocent, claiming that he had an alibi. Because the minor victim could not identify a specific time period, Mr. Hess provided his counsel with the times and dates of his schedule. He offered this schedule as evidence of his counsel's ineffectiveness. He also offered into evidence emails between himself and his prior counsel, by which he communicated his desire to withdraw his guilty plea both following the plea hearing as well as several days later. His former counsel advised him in a reply email as follows: "The plea colloquy was properly conducted by the judge. A plea cannot be withdrawn simply because you had a change of heart. If you are seeking to withdraw your plea because you believe that you were pressured into it, you will have to seek new counsel

4

to file the motion on your behalf. We cannot file a motion to withdraw on this basis as we did not pressure you into entering into a plea."

{¶11} Mr. Hess further testified that he did not remember having a dialogue with his attorneys regarding his constitutional rights and that he was told only to "sign a piece of paper." He testified that his former counsel was ineffective because they pressured him, failed to file motions to authenticate certain evidence, and failed to subpoena all of his witnesses to corroborate his alibi defense. He claimed he did not know he was pleading guilty to two counts of gross sexual imposition and believed he was only pleading guilty to one count.

{¶12} On cross examination, Mr. Hess testified that he was aware his former counsel had filed a notice of alibi along with his school and work schedule during the time period of the alleged offenses. The state also provided him with a list of witnesses his defense counsel had intended to call. Mr. Hess responded it contained only a few of the witnesses he wanted to testify. Lastly, the state provided Mr. Hess with motions his former counsel had filed to order Snapchat to comply with his requests for authentication. The state then reviewed the plea hearing transcript, where Mr. Hess acknowledged that the court allowed him to inquire about a question with his counsel, that he asked and received clarifications from the court at various points, and that he told the court he understood the effects of his guilty plea and its consequences, as well as the rights he was waiving. Further, the court reviewed the counts and the maximum term to which he was pleading guilty, demonstrating he was aware he was pleading guilty to two counts of gross sexual imposition, not just one.

{¶13} Tammy Reed ("Ms. Reed"), a friend of Mr. Hess, who was present on the date set for trial and witnessed dialogue between Mr. Hess and his counsel, also testified. Ms. Reed testified that Mr. Hess' former counsel pressured him into accepting the plea and that Mr. Hess' counsel did not inform him he would be pleading guilty to two counts of gross sexual imposition.

{¶14} The court then asked Mr. Hess if he remembered that 40 jurors had been waiting in the jury pool, that the court had reviewed the state's plea deal with Mr. Hess, and that Mr. Hess had indicated he wanted to speak with his attorneys. The court also reviewed that Mr. Hess never protested his innocence during the plea hearing but was solely concerned about the residency requirement of Tier I sexual offender registration.

{¶15} The court denied Mr. Hess's motion to withdraw his guilty plea and set the matter for sentencing. At the sentencing hearing, approximately one week later, the court sentenced Mr. Hess to community control, including 180 days in jail with credit for five days served. The court notified Mr. Hess that if he violated his community control, he could receive more restrictive community control sanctions or serve a specific prison term of eighteen months for each offense, to run consecutively.

{¶16} Mr. Hess now appeals, raising three assignment of error for our review:

{¶17} "[1.] The trial court, although the prison sentence was suspended, committed plain error by failing to follow R.C. 2929.14(C)(4) by sentencing Appellant to consecutive sentences of eighteen months, for a total of three years, without articulating the required findings.

{¶18} "[2.] The trial court committed reversible and plain error in denying Archie Hess III's *Pro Se* pre-sentence Motion to Withdraw Guilty Plea.

6

**{¶19}** "[3.] Appellant received ineffective assistance from his trial counsel by allowing Appellant to plead guilty when it appears from the record that Appellant stated that he was innocent and wanted to have a trial."

**Sentencing Standard of Review**

**{¶20}** Our consideration of a felony sentence is governed solely by R.C. 2953.08(G)(2). (Citation omitted.) *State v. Mazzola,* 11th Dist. Trumbull No. 2018-T-0029, 2019-Ohio-845, ¶14; *see State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶12. That provision states:

**{¶21}** "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶22}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶23}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶24}** "(b) That the sentence is otherwise contrary to law." *Id.* at ¶15-17, citing R.C. 2953.08(G)(2).

**{¶25}** Appellate courts "may vacate or modify any sentence that is not clearly and convincingly contrary to law only when the appellate court clearly and convincingly finds that the record does not support the sentence." *Marcum* at ¶23.

**{¶26}** The Supreme Court of Ohio has held R.C. 2929.11 and R.C. 2929.12 do not require judicial fact-finding. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶42; *State v. Macko*, 11th Dist. Lake No. 2016-L-022, 2017-Ohio-253, ¶75. "Rather, in sentencing a defendant for a felony, a court is merely required to consider the purposes and principles of sentencing in R.C. 2929.11 and the statutory * * * factors in R.C. 2929.12." *Macko* at ¶75, citing *Foster* at ¶42.

**{¶27}** Because Mr. Hess failed to object to his sentence, "our review is limited to consideration of whether the trial court committed plain error." *State v. Ferrell*, 11th Dist. Portage No. 2017-P-0069, 2019-Ohio-836, ¶36, quoting *State v. Moore*, 11th Dist. Trumbull No. 2015-T-0072, 2017-Ohio-7024, ¶45. In order to prevail under a plain error standard, an appellant must demonstrate that there was an obvious error in the proceedings and, but for the error, the outcome would have been otherwise. *State v. Waxler*, 6th Dist. Lucas No. L-15-1214, 2016-Ohio-5435, ¶7, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶62.

### *Community Control Sentencing*

**{¶28}** In his first assignment of error, Mr. Hess contends the trial court committed plain error when it sentenced him to consecutive sentences of eighteen months, for a total of three years, without articulating the required findings pursuant to R.C. 2929.14(C)(4).

**{¶29}** We find this contention to be without merit because Mr. Hess was never sentenced to consecutive terms of imprisonment. Mr. Hess' argument confuses his sentence of community control with one of probation with a suspended prison term.

**{¶30}** The Supreme Court of Ohio, in *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, succinctly explained, "[u]nlike probation, which is a period of time served during suspension of a sentence, community control sanctions are imposed as the punishment for an offense at a sentencing hearing." *Id.* at ¶14, citing R.C. 2929.01(E); 2929.01(FF). "These sanctions include community residential sanctions pursuant to R.C. 2929.16 (mandated residence in community-based correctional facilities, halfway houses, and alternative residential facilities), nonresidential sanctions pursuant to R.C. 2929.17 (including house arrest, electronic monitoring, community service, probation supervision, and curfews), and financial sanctions pursuant to R.C. 2929.18 (restitution, fines, and costs of prosecution and community control). *Id.*

**{¶31}** This court further illuminated the differences between probation and community control in *State v. Solomon,* 11th Dist. Portage No. 2017-P-0078, 2019-Ohio-1841. Thus, we clarified that: "[u]nlike a probation revocation, which merely suspended the original term imposed, when one is sentenced to community control supervision, the defendant is sentenced to community control and not sentenced to the stated prison term. * * * Community control is an alternative to the imposition of a prison term, not a suspended term as is the case with probation. * * * And the stated prison term at the initial sentencing hearing only serves *as notice* of the maximum term one faces if he violates community control." (Emphasis added.) *Id.* at ¶39, citing *State v. Duncan*, 12th Dist. Butler No. CA2015-05-086, 2016-Ohio-5559, ¶19-26.

9

**{¶32}** To delve directly into the heart of Mr. Hess' argument, the court was not required to make consecutive sentence findings pursuant to R.C. 2929.14(C) because it sentenced Mr. Hess to a sentence of community control, not a term of imprisonment. The stated prison term at the initial sentencing merely serves as a ceiling on the prison term the court *may* impose upon finding a community control violation. (Emphasis added.) *Id.* at ¶36, citing *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, ¶23.

**{¶33}** If Mr. Hess violates the terms of his community control, the trial court will sentence him anew, at which time the court may choose more restrictive community control sanctions or to sentence him up to eighteen months in prison on each count, to run consecutively. If it does so, it will then be required to make the requisite findings pursuant to R.C. 2929.14(C). "*Following a community control violation*, the trial court conducts a second sentencing hearing. At this second hearing, the court sentences the offender anew and must comply with the relevant sentencing statutes." (Emphasis added.) *Duncan* at ¶41, quoting *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, ¶17. *See also Heinz* at ¶15; *State v. Osborne,* 11th Dist. Lake No. 2004-L-068, 2005-Ohio-4895. "R.C. 2929.15(B), which details procedures for a trial court to follow when a defendant has violated community control, plainly provides that if a prison term is imposed upon the defendant for violating community control, the prison term must comply with R.C. 2929.14." (Citations omitted.) *Id.* "This statutory mandate necessarily includes the requirement that a trial court make the R.C. 2929.14(C)(4) consecutive sentence findings when sentencing a defendant to consecutive prison terms for community control violations." *Id.*

**{¶34}** Mr. Hess cites this court's holding in *Ferrell*, *supra*, in support of his contention, arguing it is identical to the present case. In *Ferrell*, we determined the trial court committed plain error because it failed to make the requisite findings prior to sentencing the appellant to consecutive sentences pursuant to R.C. 2929.14(C)(4). *Id.* at ¶40. *Ferrell,* however, is simply inapplicable to the situation presented herein. The appellant in *Ferrell* was sentenced to consecutive sentences, albeit improperly, in a community control revocation/sentencing hearing after violating the terms of his community control. *Id.* at ¶7. In order for this argument to be relevant, Mr. Hess would have had to violate his community control and then the trial court would have had to err in sentencing him to consecutive sentences.

**{¶35}** Mr. Hess's first assignment of error is without merit.

### Withdrawal of Guilty Plea

**{¶36}** In his second assignment of error, Mr. Hess argues the trial court committed reversible and plain error in denying his pro se presentence motion to withdraw his guilty plea.

**{¶37}** "Crim.R. 32.1 expressly allows for the submission of a motion to withdraw a guilty plea prior to the imposition of sentence. When the motion is made in a timely manner, it should be granted liberally." *State v. Bisson*, 11th Dist. Portage No. 2012-P-0050, 2013-Ohio-2141, ¶23, citing *State v. Johnson*, 11th Dist. Lake No. 2007-L-195, 2008-Ohio-6980, ¶20. "Nevertheless, there is no absolute right to withdraw a guilty plea before sentencing, and the motion may be overruled when there is no reasonable and legitimate basis for allowing withdrawal of the plea." *Id.*, citing *State v. Parham*, 11th Dist. Portage No. 2011-P-0017, 2012-Ohio-2833, ¶17, quoting *State v. Xie*, 62 Ohio St.3d 521

(1992), paragraph one of the syllabus. "Moreover, since the determination of a motion to withdraw lies within the trial court's sound discretion, the scope of our appellate review is limited to an 'abuse of discretion' analysis." *Id.*, citing *State v. Shaffer*, 11th Dist. Portage No. 2006-P-0115, 2007-Ohio-6404, ¶15. An abuse of discretion is a term of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-78 (1925). Stated differently, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶38}** Upon a motion to withdraw a plea a court must conduct a hearing to determine whether there is a "'reasonable and legitimate basis for the withdrawal of the plea.'" *Shaffer* at ¶16, quoting *Xie* at 527.

**{¶39}** Further, "[a] trial court does not abuse its discretion in overruling a motion to withdraw (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." *Id.* at ¶17, citing *State v. Peterseim*, 68 Ohio App.2d 211, 214 (8th Dist. 1980).

**{¶40}** The transcript of the hearing on Mr. Hess' motion to withdraw his guilty plea establishes that he was not seeking to withdraw his guilty plea because he unknowingly, involuntarily, or unintelligently entered into his plea. Mr. Hess claimed that he was

12

pressured into accepting the state's plea by his attorneys and that his former counsel did not file motions to authenticate certain evidence or plan to call all of his alibi witnesses.

{¶41} On cross-examination, however, Mr. Hess acknowledged his attorneys did file a notice of alibi, motions to authenticate, and a defense witness list. He then specifically replied "yes" when he was asked if he understood the explanation of the rights he waived by pleading guilty, and "no" when the prosecutor asked him if he was subjected to coercion that would render his plea involuntary.

{¶42} While he testified that his former counsel told him to "say yes to everything the Judge said," the transcript demonstrates otherwise. Mr. Hess felt comfortable asking the court if he could inquire about a question with his counsel, and further, Mr. Hess asked the court for clarification on several points, including consecutive versus concurrent sentencing. As to his argument that counsel did not inform him he was pleading to two counts of sexual gross imposition, he testified that he did sign the written plea negotiation and accepted it as his own. Further, the court informed him of the counts to which he was pleading guilty and the consequences, including the maximum term he faced in so doing.

{¶43} There is nothing to indicate the trial court abused its discretion in denying Mr. Hess's motion to withdraw his guilty plea after holding a full and impartial hearing. He did not demonstrate his trial counsel was incompetent and/or that the trial court failed to comply with the requirements of Crim.R. 11(C) in addressing Mr. Hess regarding the legal effect of entering a guilty plea and the constitutional rights he was waiving. Lastly, the court fairly considered the merits of his motion before rendering its decision. Thus, Mr. Hess failed to offer a reasonable and legitimate basis to withdraw his plea.

13

**{¶44}** Mr. Hess' second assignment of error is without merit.

### Ineffective Assistance of Counsel

**{¶45}** In his final assignment of error, Mr. Hess argues that his counsel was ineffective because they allowed him to plead guilty when it appears from the record that Mr. Hess stated he was innocent and wanted the case tried before a jury.

**{¶46}** In reviewing an ineffective assistance of counsel claim, the standard is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Story*, 11th Dist. Ashtabula No. 2006-A-0085, 2007-Ohio-4959, ¶49, quoting *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To successfully assert ineffective assistance of counsel, Mr. Hess must be able to demonstrate that the attorney made errors so serious that he or she was not functioning as "counsel" as guaranteed by the Sixth Amendment, and that he was prejudiced by the deficient performance. *Id.*, quoting *State v. Batich*, 11th Dist. Ashtabula No. 2006-A-0031, 2007-Ohio-2305, ¶42. In the context of a guilty plea, the standard of review for ineffective assistance of counsel is whether: (1) counsel's performance was deficient; and (2) the defendant was prejudiced by the deficient performance in that there is a reasonable probability that, but for counsel's error, the defendant would not have pled guilty. (Citation omitted.) *State v. DelManzo*, 11th Dist. Lake No. 2009-L-167, 2010-Ohio-3555, ¶33. The burden of proving ineffective assistance of counsel falls upon the defendant. (Citation omitted.) *Id.*

**{¶47}** "The mere fact that, if not for the alleged ineffective assistance of counsel, the defendant would not have entered a guilty plea is *not* sufficient to establish the requisite connection between the guilty plea and the ineffective assistance." (Emphasis

14

sic.)  (Citation omitted.)  *Id.* at ¶34.  "Rather, ineffective assistance of trial counsel is found to have affected the validity of a guilty plea when it precluded a defendant from entering his plea knowingly and voluntarily."  (Citation omitted.)  *Id.*

{¶48}  As already discussed in Mr. Hess' second assignment of error, there is nothing to suggest he was coerced into involuntarily pleading guilty or that his plea was unknowingly made.  He availed himself of both his counsel's advice and the court for clarification during his plea hearing.  He acknowledged that his counsel reviewed the Crim.R. 11 plea negotiation and written plea, and then the court scrupulously complied with the Crim.R. 11(C) colloquy.  The court explained both the consequences of his guilty plea and the constitutional rights he was waiving.  Mr. Hess acknowledged that he understood both explanations.

{¶49}  "A claim that a guilty plea was induced by ineffective assistance of counsel must be supported by evidence where the record of the guilty plea shows it was voluntarily made."  (Citations omitted.)  *Id.* at ¶36.  Thus, "[a] naked allegation by a defendant of a guilty plea inducement, is insufficient to support a claim of ineffective assistance of counsel, and would not be upheld on appeal unless it is supported by affidavits or other supporting materials, substantial enough to rebut the record which shows that his plea was voluntary."  (Citation omitted.)  *Id.* at ¶37.

{¶50}  Mr. Hess's third assignment of error is without merit.

{¶51}  The judgment of the Portage County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,
TIMOTHY P. CANNON, J.,
concur.

15