[Cite as *State v. Green*, 2024-Ohio-3260.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230551 |
| | | TRIAL NO. B-2300055 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| ANTIONETTE GREEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 28, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan Perkins*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1}    Defendant-appellant Antionette Green appeals the judgment of the Hamilton County Court of Common Pleas convicting her of assault in violation of R.C. 2903.13(A), a felony of the fourth degree, and denying her motion for a new trial.  First, Green alleges that her conviction is not supported by sufficient evidence and is contrary to the weight of the evidence.  Second, she contends that the trial court should have granted her a new trial because the State suppressed material evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  We agree with Green that she was entitled to a new trial on her *Brady* claim but disagree with her assertion as to insufficient evidence.  Accordingly, we reverse her conviction and remand the matter for a new trial.

### *Factual and Procedural Background*

{¶2}    The charge against Green arose from her employment at TruCare Provider Services, a residential caregiving services provider for adults with developmental disabilities.  On September 30, 2022, an incident occurred between Green and a TruCare client.  Green's coworker reported the incident to management, and management reported it to police.  On December 7, 2022, Green was charged with knowingly causing or attempting to cause physical harm to the client, who was "a functionally impaired person" as defined by R.C. 2903.13(A).

{¶3}    Green's counsel promptly sought discovery from the State pursuant to Crim.R. 16.  In response to Green's request for written or recorded witness statements,

the State indicated that, as of January 25, 2023, no such statements were known to the prosecutor.[1]

{¶4} Green tried her case to the trial court on July 10, 2023. Three witnesses testified: Green's coworker, Green's supervisor, and the police officer who investigated the incident.

{¶5} The coworker was the sole eyewitness. She testified that on September 30, 2022, she and Green worked the first shift at the TruCare group home to provide care for the client. The coworker described the client as being unable to verbally communicate, living with cognitive disabilities, and requiring round-the-clock care. The coworker also testified that the client engages in self-harming behaviors, including scratching herself and pulling her hair.

{¶6} The coworker recounted an incident she observed that day between Green and the client. According to the coworker, the client began to stuff food into her mouth during lunch—which she often does. Green then slapped the client in the face with an open hand, and the client scrunched down and grunted in response. Although the coworker did not observe any physical injuries to the client, she recognized the client's response as an indication that the client was hurt.

{¶7} When asked about TruCare's protocol for client injuries, the coworker testified that caregivers are required to track injuries by taking photos and documenting the injury in a notebook. The coworker admitted that she did not document the incident in the notebook and did not take photos. Instead, the coworker

---

[1] The State's discovery response indicated that if any witness statements existed, they would be included in body camera video or motor vehicle camera video. No videos meeting this description were disclosed.

reported the incident directly to her supervisor. The coworker confirmed that she was placed on leave following the incident and did not return to employment with TruCare.

{¶8} Green's supervisor testified to her involvement with the investigation. She indicated that she previously knew Green because they worked at a different company together prior to working at TruCare. The supervisor recalled the coworker contacting her to report the incident involving Green slapping the client. Following the coworker's report, the supervisor physically examined the client and observed an injury to the top of the client's head. The supervisor did not speak with Green, but reported the slap to a manager who was responsible for investigating the coworker's allegations. The supervisor was instructed by her manager to contact law enforcement.

{¶9} The supervisor's testimony also included details about the client's propensity for self-harm. According to the supervisor, she witnessed the client engage in a variety of harmful behaviors, including hair-pulling, scraping her forearms, and slapping herself in the face. The supervisor stated that the client typically slaps herself in the face every day and that the client's face appears red as a result. The supervisor further confirmed that neither the coworker nor Green were still employed with TruCare.

{¶10} Officer Meredith Newman of the Cincinnati Police Department ("CPD") also testified. She indicated that she filed a report about the incident in December 2022 but did not interview Green prior to doing so. Newman confirmed that the only witness interviewed during her investigation was the coworker.

{¶11} At the conclusion of testimony, Green moved for an acquittal under Crim.R. 29(A). The trial court responded to the motion:

I don't think there was anything presented that would allow the Court or prompt the court to disbelieve what [the coworker] said that she saw. And it really doesn't have to result in physical harm. All it has to do is be an attempt to cause physical harm.

And there was plenty of testimony from all three witnesses about the level of functioning that [the client] had. And obviously she wasn't even able to come in and testify today because of her impairment.

So with that being said, the Court does believe that the state proved beyond a reasonable doubt that Ms. Green did commit the offense of assault, and the court finds Ms. Green guilty of the F-4 assault.

{¶12} After the trial concluded but before Green was sentenced, Green's counsel became aware of a recorded statement made by the coworker and taken by Newman that the State had not previously disclosed to the defense. The recording was a video of Newman's interview of the coworker at the police station, during which Newman asked the coworker about the slapping incident.

{¶13} The State's response to Green's discovery request had not included the video recording of the coworker's statement. To the contrary, in its January 25, 2023 discovery response, the State indicated that there were no recorded witness statements. It did, however, include an October 4, 2022 CPD incident report indicating that the coworker had submitted to a recorded interview, as well as a partial summary of the coworker's statement. The summary described the coworker's

recollections about the slapping incident. Nonetheless, the actual video of the coworker's statement itself had not been turned over.

{¶14} The video contained information the coworker had not disclosed at trial and that was not included elsewhere in discovery. Notably, when asked by Newman in the interview if she and Green worked well together, the coworker indicated that at first she and Green did not get along. She then recounted the details of a work-related dispute between her and Green that occurred prior to the slapping incident. According to the coworker, Green falsely accused the coworker of working while intoxicated and hungover. In response to the allegation, the coworker had requested a transfer so that she would no longer be required to work with Green. The transfer request was not granted. The coworker and Green "had words" with one another about the situation, but the coworker "stuck it out" and continued to work with Green.

{¶15} The statement summary contained in the disclosed CPD incident report omitted these details. Thus, when Green tried her case to the court, she was without access to the coworker's statements about their prior work dispute. Green therefore moved for a new trial under Crim.R. 33(A)(6), alleging a *Brady* violation based on the nondisclosure of the coworker's recorded statement.

{¶16} The trial court heard the motion on August 3, 2023. Green argued that the recording was material and exculpatory, because it contained new information indicating that the coworker had a motive to fabricate the allegations against Green. The State in turn conceded that the evidence was material but contended that it was not exculpatory because it merely corroborated the coworker's trial testimony.

{¶17} On September 7, 2023, the trial court denied Green's motion for a new trial. In doing so, it first considered the factors set forth in *State v. Petro*, 148 Ohio St. 505 (1947), syllabus, for new trial motions based on newly discovered evidence under

Crim.R. 33(A)(6). These factors consider whether the evidence: (1) has been discovered since the trial; (2) is material to the issues; (3) could not have been discovered before trial even with the exercise of due diligence; (4) is not merely cumulative to former evidence; (5) does not merely impeach or contradict the former evidence; and (6) discloses a strong probability that it will change the result if a new trial is granted. *Id.* In applying these criteria, it concluded that the video of the coworker's interview was discovered after the trial and was material to Green's culpability. But it held that defense counsel could have uncovered the video with due diligence, given that the incident report referenced a recorded interview. And it held that there was not a strong probability of a different result at trial, given that the statement would merely be used to impeach the coworker. It thus denied Green's motion for a new trial under Crim.R. 33(A)(6).

{¶18} Regarding Green's *Brady* claim, the trial court noted the elements of a *Brady* violation: (1) the evidence at issue was favorable to the accused; (2) the evidence was suppressed by the state either willfully or inadvertently; and (3) prejudice ensued. *State v. Wogenstahl*, 2004-Ohio-5994, ¶ 26 (1st Dist.). It determined that the State did not suppress the video of the coworker's statement because the incident report referenced a recording. It therefore rejected Green's *Brady* claim without considering whether the evidence was favorable to Green or whether Green was prejudiced by its nondisclosure.

{¶19} Following the denial of Green's new trial motion, the trial court held a sentencing hearing. On October 3, 2023, it sentenced Green to two years of community control and ordered her to stay away from the client.

{¶20} Green now appeals.

*Analysis*

{¶21} Green raises four assignments of error in this appeal. Her first assignment of error challenges the sufficiency of the evidence supporting her assault conviction, and her second assignment of error argues that the conviction was against the manifest weight of the evidence. Her third assignment of error challenges the trial court's denial of her *Brady* claim, and her fourth assignment of error contends that the trial court abused its discretion in denying her motion for a new trial under Crim.R. 33(A)(6). Because Green's third assignment of error—her *Brady* claim—is dispositive of this appeal, we consider it first out of order.

## Brady *Violation*

{¶22} Regarding *Brady*, Green argues that the trial court acted to her prejudice by convicting her of assault when the State failed to disclose the exculpatory details of the coworker's interview. Because a *Brady* claim raises issues of due process that are mixed questions of law and fact, our standard of review is de novo. *State v. Smith*, 2018-Ohio-4692, ¶ 24-25 (2d Dist.).

{¶23} As a matter of due process, *Brady* imposes upon prosecutors the affirmative duty to disclose evidence that is favorable and material to the accused's guilt or punishment. *Brady*, 373 U.S. at 87; *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). The duty is inclusive of evidence that is exculpatory of guilt, as well as evidence that serves to impeach the State's witnesses. *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999), quoting *Kyles* at 438. To comply with *Brady*, the prosecution has a duty to learn of favorable evidence known to other governmental actors in the case, including the police. *Kyles* at 437. As a result, *Brady* encompasses both willful and inadvertent suppressions of evidence by the State. *See Strickler* at 282; *see also State v. McNeal*, 2022-Ohio-2703, ¶ 19.

8

**{¶24}** The duty of compliance with *Brady* therefore falls squarely on the State. "Criminal defendants have no duty to scavenge for hints of undisclosed *Brady* material." (Internal citations omitted.) *McNeal* at ¶ 23. Nor must a criminal defendant demonstrate the exercise of reasonable diligence in attempting to discover suppressed favorable evidence to state a valid *Brady* claim. *Id.*

**{¶25}** A defendant claiming a *Brady* violation must therefore demonstrate that: (1) the evidence is favorable to the defendant, because it is either exculpatory or impeaching, (2) the evidence was either willfully or inadvertently suppressed by the state, and (3) the defendant was prejudiced as a result. *State v. Brown*, 2024-Ohio-749, ¶ 30. Evidence is material or prejudicial when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *Id.*; *Kyles* at 433. This standard is met when the government's suppression of favorable evidence to the defense "undermines confidence in the outcome of the trial." *Kyles* at 434.

### A. *Did the Prosecution Fail to Disclose Evidence?*

**{¶26}** We begin by considering whether the key piece of evidence upon which Green's *Brady* claim is based—the coworker's recorded interview—was either willfully or inadvertently suppressed by the prosecution. The trial court denied Green's *Brady* claim on this basis, and the State repeats the argument on appeal, contending that its disclosure of the CPD incident report referencing the coworker's statement was sufficient to comply with *Brady*.

**{¶27}** The record does not support the trial court's conclusion. To begin, there is a distinction between disclosing that a recorded interview of the coworker occurred—a fact which is neither material to Green's defense nor exculpatory to her—and disclosing the coworker's actual statements. Viewing the evidence in the light

9

most favorable to the State, the CPD incident report may have placed the defense on notice that a recorded interview with the coworker existed as of the date of the report, October 4, 2022. But, for two reasons, that notice, even if given, did not sufficiently apprise the defense of the contents of the coworker's statement.

{¶28} First, the State's subsequent discovery response effectively negated the representation in the CPD incident report that a record interview still existed. To that end, the State affirmatively represented to the defense in its January 25, 2023 discovery response that there were no recorded statements. Evidence can be lost. Recordings can be erased. Given the more than three-month gap between the recorded interview and the discovery response, Green was entitled to take the State at its word that no recorded witness statements existed as of January 25, 2023. *See, e.g., State v. Buehner*, 2021-Ohio-4435, ¶ 58, 61 (8th Dist.) (highlighting significance of prosecutor's representation during the discovery process that no exculpatory material was available in granting defendant's *Brady* claim based on undisclosed witness statements).

{¶29} Second, and perhaps more importantly, even if the State's January 25, 2023 discovery response did not negate the CPD incident report's reference to a recorded statement, the summary of the coworker's interview contained in the report surely did. That interview summary referenced only the coworker's statements about the slapping incident and included none of the details about the coworker's ill will towards Green. Notably, the summary did not recount the coworker's work-related issues with Green, her request to transfer to another role so as not to work with Green, or her allegation that Green had falsely accused her of being drunk on the job. As such, there was nothing in the CPD incident report that alerted Green to the favorable portions of what the coworker said. We therefore reject the State's argument that its

disclosure of the CPD incident report was sufficient to place Green on notice of the coworker's recorded statement.

{¶30} But even if we agreed that the CPD incident report placed the defense on notice of the need to inquire further, it similarly placed the State on the same notice. And the law requires the prosecution to disclose material evidence favorable to the defense that is either in its possession or within the possession of the police, which it failed to do. *See Kyles*, 514 U.S. at 434.

{¶31} We therefore conclude that the State withheld the relevant portions of the coworker's statement.

### *B. Was the Nondisclosed Evidence Material?*

{¶32} We next consider whether the coworker's recorded statement was material to Green's defense. The question of materiality is one we review de novo, giving no deference to the trial court. *See Buehner*, 2021-Ohio-4435, at ¶ 43 (8th Dist.).

{¶33} The coworker was the only eyewitness to the incident. The coworker's credibility and believability were therefore at the forefront of Green's defense. In finding Green guilty, the trial court emphasized that it had no reason to "disbelieve what [the coworker] said that she saw." In other words, the trial court lacked any indicia of bias or motive to fabricate on the coworker's part.

{¶34} The nondisclosed recorded interview supplies that information. In the interview, the coworker admitted that she did not get along with Green in the past and accused Green of making false allegations against her at work. As the coworker reported to Newman, the tension between the two was so heightened that the coworker sought a transfer so as not to work with Green. These events call into question the coworker's motive for reporting Green to her manager and could have been used in

cross-examination to impeach the coworker's credibility. They therefore undermine confidence in the outcome of Green's trial and paint the coworker's testimony in a new light.

{¶35} We pause here to note a further wrinkle in the trial court's order denying Green a new trial. In rejecting Green's new trial motion under Crim.R. 33, the trial court considered whether the recorded statement created a "strong probability" of a different result. *See Petro*, 148 Ohio St. at 505 (establishing factors to consider in granting new trial based on newly discovered evidence). It concluded that it did not. But the *Brady* materiality standard does not require a *strong* probability of acquittal on retrial to establish a violation. To the contrary, *Brady* instead focuses on whether the undisclosed evidence "undermines confidence in the outcome of the trial" such that there is a *reasonable*—rather than a strong—probability of a different result. *See Brown*, 2024-Ohio-749, at ¶ 30. Given this distinction, and our nondeferential standard of review, we do not take the trial court's finding as dispositive.

{¶36} In our view, it is reasonably probable that the coworker's testimony would be disbelieved were she to be subject to cross-examination about her bias towards Green. Green has therefore established that the suppressed evidence was material.

## C. Was Green Prejudiced?

{¶37} Courts in Ohio require a defendant to demonstrate prejudice in order to state a successful *Brady* claim. *See, e.g., Brown* at ¶ 30. Yet there exists no specific definition of prejudice, other than the materiality standard requiring a reasonable probability of a different result. *See id.* (defining both materiality and prejudice as "a reasonable probability that, had the evidence been disclosed, the result of the

proceeding would have been different"). Thus, the prejudice element of a *Brady* claim appears redundant to the materiality element.

**{¶38}** We have already explained that the coworker's statement was material to the defense. It impeached the credibility of the only witness who described the incident between Green and the client, and it provided a motive for the coworker to fabricate her testimony. Green was therefore prejudiced by its nondisclosure.

**{¶39}** Green has accordingly stated a meritorious *Brady* claim. Contrary to the trial court's conclusion, the State suppressed favorable impeachment evidence that undermines confidence in Green's conviction and creates a reasonable probability of acquittal had it been disclosed. We therefore sustain Green's third assignment of error.

### *Insufficient Evidence*

**{¶40}** In her first assignment of error, Green argues that her assault conviction was not supported by sufficient evidence. If correct, this argument would result in discharge from prosecution, rather than a new trial. *See State v. Cleavenger*, 2020-Ohio-1325, ¶ 43 (11th Dist.). We therefore consider it for the purpose of assessing the correct remedy in Green's appeal.

**{¶41}** To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.). The relevant test is not whether the evidence is to be believed, but rather whether the evidence, if believed, sustains the conviction. *Jenks* at paragraph two of the syllabus.

{¶42} R.C. 2903.13(A) provides that, "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." A person acts knowingly when "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Under R.C. 2903.13(C)(2), assault is a felony of the fourth degree "if the offense is committed by a caretaker against a person with a functional impairment under the caretaker's care."

{¶43} Sufficient evidence establishes each of these elements. At trial, the coworker testified that Green slapped the client in the face because she was eating her lunch too quickly. The coworker recalled details of how the client responded: by scrunching down and grunting consistent with being hurt. This evidence was sufficient to establish that Green knowingly caused physical harm to the client. Both the coworker and her supervisor testified that the client is a person with functional impairment, which was sufficient to establish the fourth-degree felony level of the offense.

{¶44} Green points to an inconsistency in the supervisor's testimony as evidence of insufficiency. She argues that the supervisor could not have observed an injury on the top of the client's head when Green supposedly slapped the client in the face. But the supervisor's testimony in this regard was immaterial to Green's guilt, given the coworker's testimony that the client reacted to the slap by demonstrating that she felt pain.

{¶45} Green's first assignment of error is accordingly overruled.

### *New Trial and Manifest Weight*

**{¶46}** Green's remaining two assignments of error—that her conviction was against the manifest weight of the evidence and that the trial court erred in denying her motion for new trial under Crim.R. 33—are rendered moot by our resolution of her third assignment of error. We accordingly decline to consider them.

### *Conclusion*

**{¶47}** Because the State suppressed favorable impeachment evidence and violated Green's due process rights under *Brady*, Green's third assignment of error is sustained. We therefore reverse the judgment of the trial court and remand the cause for a new trial. Green's first assignment of error is overruled, as the State presented sufficient evidence of assault at trial. Green's second and fourth assignments of error are moot in light of the relief granted on her third assignment of error, and we decline to address them.

Judgment reversed and remanded.

**BOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.