[Cite as *State v. Wilson*, 2026-Ohio-1178.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240696 |
| | | TRIAL NO. B-2205654 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| DERRICK J. WILSON, | : | |
| | | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to appellee and 50% to appellant.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 4/1/2026 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *State v. Wilson*, 2026-Ohio-1178.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                :        APPEAL NO.   C-240696

                                        TRIAL NO.    B-2205654

     Plaintiff-Appellee,       :

   vs.                       :        *O P I N I O N*

DERRICK J. WILSON,       :

     Defendant-Appellant.   :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 1, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Derrick J. Wilson appeals his convictions for eight counts of rape, Counts 1 through 4 involved a child under ten and Counts 5 through 8 involved a child under 13, and four counts of gross sexual imposition ("GSI"), Counts 9 through 11 occurred when the child was under 13 and Count 14 occurred when the child was over 13. In six assignments of error, Wilson argues the trial court erred by admitting multiple hearsay statements, the State failed to provide exculpatory evidence in violation of *Brady*, he was denied the effective assistance of counsel when counsel failed to object to the hearsay statements, the trial court erred by sentencing him to consecutive sentences without making the required findings, his convictions were against the manifest weight of the evidence, and the cumulative effect of the errors deprived him of the right to a fair trial. For the following reasons, we affirm the judgment of the trial court in part, reverse the judgment of the trial court in part, and remand the cause to the trial court.

{¶2} Wilson was charged for sexual offenses against his "stepdaughter,"[1] K.C., that occurred when she was a child from February 2012 through February 2019. Wilson pleaded not guilty and proceeded to a jury trial. The jury acquitted Wilson of Count 12, a charge of rape, and Count 13, sexual battery. The jury found him guilty of the remaining charges. The trial court imposed an aggregate minimum sentence of 25 years to be followed by two consecutive life sentences.

### Alleged Hearsay Statements

{¶3} In his first assignment of error, Wilson contends that the trial court erred by allowing multiple hearsay statements into evidence regarding the child

---

[1] Wilson was the boyfriend of K.C.'s mother, but had acted as her stepfather since K.C. was two years old. Because K.C. refers to him as her stepfather, we will refer to him as her stepfather.

victim's allegations, thereby bolstering the credibility of K.C.'s testimony, which was not corroborated by any physical evidence.

{¶4} Hearsay consists of "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Generally, hearsay is inadmissible unless it falls within an enumerated exception. *See* Evid.R. 802. We review hearsay rulings for an abuse of discretion. *State v. Hamm*, 2017-Ohio-5595, ¶ 28 (1st Dist.).

{¶5} Where the party did not object to a statement on the basis that it was hearsay, he has forfeited all but plain error. *State v. Square*, 2018-Ohio-4574, ¶ 39 (11th Dist.), citing *State v. Santiago*, 2003-Ohio-2877, ¶ 11 (10th Dist.). "Under the plain-error doctrine, the appellant must show an 'error,' meaning a deviation from a legal rule, and the error must constitute an obvious defect in the trial court's proceedings." *Id.*, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶6} Wilson first challenges K.C.'s mother's testimony that K.C. told her that Wilson raped her. Wilson objected based on hearsay, and the State argued the statement was admissible for the nonhearsay purpose of its effect on the listener. The trial court overruled the objection.

{¶7} "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). A statement is not hearsay when introduced to show its effect on the listener. *State v. Osie*, 2014-Ohio-2966, ¶ 122.

{¶8} Here, mother did not take any action upon hearing K.C.'s disclosures. Consequently, K.C.'s disclosure to her mother was inadmissible hearsay. However, the admission of the statement was harmless beyond a reasonable doubt where K.C.

testified about telling her mother the details of the abuse. The jury's verdict would have been the same regardless of mother's testimony that K.C. told her that Wilson raped her. *See State v. Moore*, 2019-Ohio-1671, ¶ 47 (2d Dist.) (finding the child's abuse disclosure to mother inadmissible hearsay but harmless in light of the child's detailed testimony about the abuse).

**{¶9}** Next, Wilson objects to the detective's testimony that K.C. did not want him to interview her brother. The statement was admitted to explain how the investigation proceeded. In general, testimony offered to explain the investigation of the witness is not offered to prove the matter asserted, and therefore, is nonhearsay. *See Thomas* at 232; *State v. Jordan*, 2014-Ohio-2857, ¶ 7 (9th Dist.) (Statements that are offered into evidence to explain an officer's conduct while investigating a crime are not, however, hearsay.). Testimony explaining police conduct is nonhearsay when the statements do not connect the accused with the crime charged, the conduct is relevant, and the probative value is not substantially outweighed by the danger of unfair prejudice. *See State v. Ricks*, 2013-Ohio-3712, ¶ 27.

**{¶10}** Here, the statement was relevant because the defense challenged the adequacy of the police investigation and specifically the investigator's failure to interview the brother. The danger of unfair prejudice did not outweigh any probative value, and the statement did not connect Wilson to the crime. Accordingly, the trial court did not err in admitting the statement.

**{¶11}** Next, Wilson challenges the admissibility of the video and summary of the Mayerson Center for Safe and Healthy Children ("Mayerson Center") forensic interview. The Mayerson Center interviews child sexual-assault victims to assess the need for physical and mental-health care. Wilson did not object to the video of the interview, and his sole objection to the summary was based on the best-evidence rule.

5

Consequently, he has waived all but plain error. *See Square*, 2018-Ohio-4574, at ¶ 39 (11th Dist.).

**{¶12}** To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial. *Rogers*, 2015-Ohio-2459, at ¶ 22.

**{¶13}** Here, Wilson does not present a plain-error argument. "This court consistently holds that we 'need not analyze plain error when appellant has failed to make a plain[] error argument.'" *State v. Jones*, 2025-Ohio-3252, ¶ 12 (1st Dist.); *State v. Patton*, 2021-Ohio-295, ¶ 25 (1st Dist.) (Explaining that an appellate court "will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.").

**{¶14}** Additionally, statements made to a social worker with the Mayerson Center for the purposes of medical diagnosis and treatment are an exception to the hearsay rule under Evid.R. 803(4). *See State v. Turner*, 2020-Ohio-1548, ¶ 52 (12th Dist.); *State v. White*, 2021-Ohio-1644, ¶ 70 (1st Dist.) (holding "that the 2018 Mayerson Center interview was for medical diagnosis and treatment, it was properly admitted into evidence under Evid.R. 803(4)"); *State v. Burson*, 2024-Ohio-1834, ¶ 50 (12th Dist.) ("[T]his court has repeatedly upheld the admission of statements made to social workers at the Mayerson Center for purposes of medical diagnosis and treatment."). "And Evid.R. 803(4)'s term 'medical diagnosis or treatment' does not solely involve physical health—it includes mental-health diagnoses and treatment." *State v. Snyder*, 2025-Ohio-4444, ¶ 166 (1st Dist.). Statements for the purpose of medical diagnosis include the identity of the perpetrator, the type of abuse alleged, a

time frame of the alleged abuse, and areas where the child was touched. *Turner* at ¶ 52.

{¶15} This court has previously held that the admission of statements in a Mayerson Center interview did not constitute plain error. *See State v. Warner*, 2024-Ohio-1949, ¶ 32 (1st Dist.). Although the court found that some of the statements in the interview were not made for medical diagnosis or treatment, the defendant's "failure to object to any portion of the Mayerson interview" resulted in the court's conclusion that "the trial court's admission of these statements does not constitute plain error." *Id.* Other courts have found that the admission of forensic interviews and summaries containing statements that were not made for medical treatment was harmless error where the victim testified at trial. *See State v. Meacham*, 2025-Ohio-5645, ¶ 49 (10th Dist.) (After thoroughly reviewing the forensic-interview summary, the court found that "the vast majority of the statements contained therein were descriptions of the types of sexual abuse appellant allegedly perpetrated upon R.M. . . . Thus, because the contextual statements contained in the summary were minimal and R.M. testified, any erroneous admission of those statements was harmless error."); *State v. McCauley*, 2025-Ohio-3158, ¶ 59-60 (5th Dist.) (Even assuming some portions of the forensic interview were erroneously admitted, any error was harmless where M.S. testified at trial and the "jury had the opportunity to assess her demeanor, credibility, and memory."). Accordingly, this argument has no merit.

{¶16} Next, Wilson contends that the court committed plain error by allowing K.C.'s therapist, who provided counseling services to K.C., to testify about her sexual-abuse disclosures. When K.C. first sought counseling, the therapist testified that K.C. was "depressed and lost." During the course of their therapy sessions, K.C. disclosed that her stepfather had sexually abused her. Because the statements were made for

7

the purposes of medical diagnosis and treatment, they were admissible under Evid.R. 803(4). *See Turner*, 2020-Ohio-1548, at ¶ 52 (12th Dist.); *White*, 2021-Ohio-1644, at ¶ 70 (1st Dist.). The admission of the statements was not plain error. *See Warner* at ¶ 32.

{¶17} The therapist also testified that K.C. did not exhibit a propensity to lie. The State agrees that the testimony regarding K.C.'s credibility was improper but contends that the error was harmless because the jury was able to assess K.C.'s credibility during her testimony and her interview with the Mayerson social worker. K.C. testified and was subject to cross-examination, giving the jury an independent basis to determine her credibility. Therefore, the admission of the therapist's testimony did not prejudice Wilson and was harmless error. *See State v. Bowman*, 2025-Ohio-2729, ¶ 15 (3d Dist.) (finding harmless error after one witness testified that the victim was truthful where the victim testified allowing the jury to determine the victim's credibility); *State v. Bruce*, 2023-Ohio-3298, ¶ 64 (3d Dist.) ("while having a witness testify that the victim is telling the truth is an error, it is harmless error if the victim testifies and is subject to cross-examination").

{¶18} Next, Wilson asserts that the court committed plain error by admitting hearsay in the form of a medical doctor's notation on the Mayerson summary that K.C. did not have a physical examination. The doctor, who did not testify, further noted that "even a normal examination would be consistent with this history of sexual abuse." Wilson fails to explain how the admission constituted an obvious error or how he was prejudiced by the statement. Consequently, he has not demonstrated plain error. *See Rogers*, 2015-Ohio-2459, at ¶ 22 (explaining the accused must demonstrate an obvious error and that the error affected the outcome of the trial). Moreover, both the detective and the Mayerson Center forensic interviewer testified that in cases of

8

delayed disclosures, physical examinations are rarely done because they do not yield evidence of sexual abuse.

{¶19} Finally, Wilson argues that the cumulative effect of the inadmissible hearsay was to bolster the credibility of the victim. As previously discussed, most of the statements were not hearsay under Evid.R. 803(4), and the medical doctor's notation and mother's statement did not prejudice Wilson. Although the therapist's statement regarding the victim's credibility was improper, the victim testified and was subject to cross-examination, allowing the jury to independently assess her credibility. *See Bowman*, 2025-Ohio-2729, at ¶ 15; *Bruce*, 2023-Ohio-3298, at ¶ 64.

{¶20} Accordingly, we overrule the first assignment of error.

## Ineffective Assistance of Counsel

{¶21} In his third assignment of error,[2] Wilson challenges the effectiveness of his trial counsel due to counsel's failure to object to the therapist's testimony, the Mayerson Center Report, and a timeline chart created by the State, and agreeing to a joint exhibit of the transcript of the Mayerson interview.

{¶22} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing is fatal to the claim. *Id.* at 697. A defendant is prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct. *Id.* at 694. In assessing such claims, a reviewing court must remain mindful that "the defendant must overcome the presumption that, under the circumstances,

---

[2] For ease of discussion, we address some of the assignments of error out of order.

9

the challenged action 'might be considered sound trial strategy.'" *State v. Echols*, 2021-Ohio-4193, ¶ 40 (10th Dist.), quoting *Strickland* at 689.

**{¶23}** As previously discussed, the therapist's testimony was admissible under Evid.R. 803(4), and the credibility statement did not prejudice Wilson. Similarly, the admission of the hearsay statements in the Mayerson Center report was not plain error, which encompasses a finding that any error did not result in prejudice or affect the outcome of the trial. *See Rogers*, 2015-Ohio-2459, at ¶ 22.

**{¶24}** Wilson contends counsel was ineffective for failing to object to the admission of the State's timeline and agreeing to admit the transcript of the Mayerson interview. Both exhibits were demonstrative in nature to aid the jury. No error occurs when a transcript is given to the jury as a listening aid, "where there are no material differences between a tape admitted into evidence and a transcript given to the jury." *State v. Miller*, 2002-Ohio-3296, ¶ 7, citing *State v. Waddy*, 63 Ohio St.3d 424 (1992). Wilson does not allege any difference between the video and the transcript or explain how the outcome of the trial was affected by the transcript when the interview itself was also admitted.

**{¶25}** The timeline that was admitted was a visual aid based on the indictment. It included the years from 2012 to 2019, and the addresses where K.C. lived during that time frame. It also included that in Counts 1-4, K.C. was under ten years old, in Counts 5-11, she was under 13 years old, and Counts 11 and 12, she was over 13 years old. Wilson argues that he was prejudiced by the timeline because K.C. "did not testify to her age at the time of the abuse." However, the record reflects that K.C. testified that the abuse began when she was seven or eight. Moreover, "[i]n many cases involving the sexual abuse of children, the victims are simply unable to remember exact dates, especially where the crimes involve a repeated course of

conduct over an extended period of time." *State v. See*, 2020-Ohio-2923, ¶ 17 (1st Dist.), quoting *State v. Rucker*, 2012-Ohio-185, ¶ 43 (1st Dist.). Accordingly, Wilson cannot establish that he was prejudiced by the admission of the timeline.

{¶26} Next, Wilson contends his counsel was ineffective for failing to object to K.C.'s testimony that "it was a hassle driving to court," and a financial burden now that she lived in a different state. Wilson asserts that this testimony was irrelevant and "bolstered the veracity of her testimony." The State concedes that the testimony may have been irrelevant, but argues that Wilson failed to establish that he was prejudiced by the testimony.

{¶27} As previously discussed, the jury had ample opportunity to judge K.C.'s credibility, as she testified and was subject to cross-examination. Additionally, Wilson's counsel used this testimony to undermine K.C.'s credibility by getting her to admit that the prosecutor's office reimbursed her for her expenses. Thus, the failure to object could be considered sound trial strategy. *See Echols*, 2021-Ohio-4193, at ¶ 40.

{¶28} We overrule the third assignment of error.

## Cumulative Error

{¶29} In his sixth assignment of error, Wilson asserts that the cumulative effect of the trial court's abuse of discretion throughout the trial denied him a fair trial. "The doctrine of cumulative error allows a conviction to be reversed if the cumulative effect of errors, deemed separately harmless, deprived the defendant of his right to a fair trial." *State v. Johnson*, 2019-Ohio-3877, ¶ 57 (1st Dist.). To find cumulative error, an appellate court first must find multiple errors committed at trial. *State v. Madrigal*, 87 Ohio St.3d 378, 398 (2000). The court must then find a reasonable probability that the outcome below would have been different but for the combination

of separately harmless errors. *State v. Fletcher*, 2021-Ohio-1515, ¶ 16 (2d Dist.).

{¶30} Here, most of the evidence Wilson complains of was admissible. As previously discussed, there were two instances of separately harmless error—the admission of mother's statement regarding K.C.'s disclosure and the therapist's credibility statement. Viewing the improperly-admitted testimony cumulatively, there is no reasonable probability the jury's verdicts would have been different if it had been excluded.

{¶31} We overrule the sixth assignment of error.

## Alleged *Brady* Violation

{¶32} In his second assignment of error, Wilson contends that the State failed to disclose exculpatory evidence, regarding the detective's failed attempt to make a recorded call, in violation of *Brady* and his right to a fair trial.

{¶33} The State's failure to disclose exculpatory evidence violates the accused's due-process rights "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83 (1963). Evidence is material where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324 (2017), quoting *Cone v. Bell*, 556 U.S. 449, 469-470 (2009).

{¶34} To prevail on a *Brady* claim, a defendant must show that (1) the undisclosed evidence favored the accused, (2) the State, willfully or inadvertently, suppressed the evidence, and (3) the suppression prejudiced the accused. *State v. Green*, 2024-Ohio-3260, ¶ 18 (1st Dist.).

{¶35} Here, the evidence that the detective's attempt to execute a controlled call was unsuccessful was disclosed during the trial. The trial court correctly

determined that the evidence was not material to either guilt or punishment because the detective failed to elicit any statements from Wilson. The statement related to an unsuccessful investigative attempt. *See United States v. Agurs*, 427 U.S. 97, 109 (1973) ("There is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.").

**{¶36}** Moreover, Wilson was not prejudiced by the late disclosure because he had an opportunity to cross-examine the detective and the victim about the failed attempt. Therefore, the State's delay in providing the information was not a *Brady* violation. *See State v. Thomas*, 2025-Ohio-1343, ¶ 37 (explaining that the disclosure of exculpatory evidence during trial did not result in prejudice where the accused had the opportunity to use the exculpatory material during trial).

**{¶37}** We overrule the second assignment of error.

## Manifest Weight

**{¶38}** In his fifth assignment of error, Wilson argues that his convictions were not supported by the manifest weight of the evidence because the victim's testimony was not credible. Essentially, he argues that the jury erred by believing the victim because her testimony was the only evidence that the abuse occurred.

**{¶39}** When reviewing a weight-of-the-evidence argument, the appellate court reviews the entire record, weighing the evidence and all reasonable inferences; considers the credibility of witnesses; and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

**{¶40}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Mosley*, 2025-Ohio-4448, ¶ 53 (1st

13

Dist.). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *In re E.S.*, 2022-Ohio-2003, ¶ 34 (5th Dist.).

**{¶41}** Courts have held delayed disclosures of sexual abuse by a minor do not render a conviction against the manifest weight of the evidence. *See State v. Peterson*, 2024-Ohio-2903, ¶ 20 (8th Dist.); *State v. Harris*, 2018-Ohio-578, ¶ 53 (8th Dist.). Although the victim delayed in reporting the abuse, the jury considered the credibility of her testimony and the reasons for the delayed disclosures. Additionally, the Mayerson Center forensic examiner and social worker, an expert in child sexual abuse, explained why children often delay in reporting their abuse. The State also presented evidence that Wilson admitted to inappropriately touching the victim to her mother after the victim informed Wilson that she was going to tell her mother. The State offered and the trial court admitted an incriminating text exchange between Wilson and the victim where Wilson admitted that "it's – that is our past," and a discussion about him cuddling the victim and his promise to "maybe chill out on the cuddling."

**{¶42}** Furthermore, "'there is no requirement that testimonial evidence of sexual abuse must be corroborated by physical or other evidence.'" *State v. Lykins*, 2019-Ohio-3316, ¶ 49 (4th Dist.), quoting *State v. Maloney*, 2018-Ohio-316, ¶ 61 (2d Dist.), quoting *State v. Barnes*, 2014-Ohio-47, ¶ 31 (2d Dist.) (holding that while the only evidence of sexual abuse was the victim's testimony, "the fact that there was no DNA evidence of Barnes' sexual contact with H.S. does not render his conviction against the manifest weight of the evidence"); *State v. Thomas*, 2015-Ohio-5247, ¶ 31 (9th Dist.) (stating that "physical evidence is not required to support a rape conviction against a manifest weight challenge"). Moreover, here, the investigating officer testified that it was unlikely that any physical evidence would be discovered due to the

amount of time that had passed between the dates of the sexual contact and the disclosure.

{¶43} Based upon the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in arriving at its verdicts. We decline to substitute our judgment for that of the jury regarding the credibility of the witnesses or the weight given their testimonies.

{¶44} Accordingly, the fifth assignment of error is without merit.

## Consecutive Sentences

{¶45} In his fourth assignment of error, Wilson contends that the trial court erred when it sentenced Wilson to consecutive sentences without making the required findings under R.C. 2929.14(C)(4).

{¶46} The State concedes the error, and the record reflects that the trial court failed to make any of the requisite statutory findings under R.C. 2929.14(C)(4) prior to imposing consecutive sentences.

{¶47} Therefore, we sustain the fourth assignment of error, vacate the consecutive nature of the sentences, and remand the matter for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make all of the required findings on the record and incorporate those findings into its sentencing journal entry.

## Conclusion

{¶48} Having overruled five of Wilson's assignments of error, and sustaining the assignment of error regarding consecutive sentences, we remand the cause to the trial court for resentencing solely as to the consecutive nature of the sentences. We

affirm the trial court's judgment in all other respects.

Judgment accordingly.

**NESTOR** and **MOORE, JJ.,** concur.